PEOPLE v GARZA

Docket No. 222516. Submitted March 6, 2001, at Grand Rapids. Decided
June 1, 2001, at 9:10 A.M. Leave to appeal sought.

Daniel R. Garza was convicted by a jury in the Kalamazoo Circuit
Court, Philip D. Schaefer, J., of two counts of first-degree criminal
sexual conduct (CSC), assault with intent to do great bodily harm,
kidnapping, and unlawfully driving away an automobile (UDAA). The
defendant was sentenced as a second-offense habitual offender to
imprisonment for life for one CSC conviction, fifty to seventy-five
years for the other CSC conviction, ten to fifteen years for the
assault conviction, forty to sixty years for the kidnapping convic-
tion, and five to seven years for the UDAA conviction. The defendant
appealed.

The Court of Appeals *held*:

1. The trial court did not abuse its discretion in denying the
defendant's motion for a new trial, the motion having been brought
on the asserted ground that defense counsel had been ineffective at
trial for failing to call a witness who would have corroborated the
defendant's testimony that the defendant and the complainant were
affectionate at the South Haven nightclub where they met. Deci-
sions regarding what evidence to present and whether to call or
question witnesses are presumed to be matters of trial strategy, for
which the Court of Appeals will not substitute its judgment for that
of counsel. Defense counsel testified that he did not call the wit-
ness because the witness was too drunk to remember anything of
significance. The trial court found that defense counsel's decision
not to call the witness constituted trial strategy rather than inad-
vertence. Even if the jury believed the proposed testimony that the
defendant and the complainant were affectionate in South Haven,
the jury could still have found that the defendant beat and twice
sexually assaulted the complainant in Kalamazoo and drove off
with her automobile.

2. The sentences imposed do not violate the principle of propor-
tionality. The record does not support the defendant's contention
that he is capable of rehabilitation and had never before committed
the types of crime of which he was convicted. The record indicates
that the defendant lacks rehabilitative potential and has a history

of violence toward women, having been convicted of maliciously destroying property belonging to a former girlfriend and a former wife, both of whom had restraining orders against him.

3. The sentencing judge's written recommendation in the judgment of sentence that the defendant not be granted parole on the sentence of life imprisonment did not violate MCL 791.234(6)(b), now MCL 791.234(6)(c). Subsection 34(6)(c) provides that parole shall not be granted to a prisoner under sentence for life until after a public hearing, that notice of the public hearing shall be given to the sentencing judge or that judge's successor in office, and that parole shall not be granted if the sentencing judge or that judge's successor files written objections to the granting of parole within thirty days of receiving notice of the hearing. Notwithstanding the recommendation against parole in the judgment of sentence in this case, the sentencing judge or his successor must still file a written objection in accordance with subsection 34(6) to prevent the grant of parole to the defendant.

Affirmed.

Sentences — Life Imprisonment — Parole.

A sentencing judge does not violate the statutory procedures for granting or denying parole to prisoners under sentence for life in making a written recommendation in the judgment of sentence that the defendant sentenced to life imprisonment never be paroled (MCL 791.234[6][c]).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *James J. Gregart*, Prosecuting Attorney, and *Judith B. Ketchum*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Douglas W. Baker*), for the defendant on appeal.

Before: Saad, P.J., and Fitzgerald and O'Connell, JJ.

Fitzgerald, J. Following a jury trial, defendant was convicted of two counts of first-degree criminal sexual conduct (csc), MCL 750.520b, assault with intent to do great bodily harm, MCL 750.84, kidnapping, MCL 750.349, and unlawfully driving away an automobile (udaa), MCL 750.413. Defendant was sentenced as

an habitual offender, second offense, MCL 769.10, to life imprisonment for one CSC conviction, fifty to seventy-five years' imprisonment for the other CSC conviction, ten to fifteen years' imprisonment for the assault conviction, forty to sixty years' imprisonment for the kidnapping conviction, and five to seven years' imprisonment for the UDAA conviction. Defendant appeals as of right. We affirm.

On August 23, 1996, the complainant was celebrating a friend's birthday in South Haven. She parked her car in a lot across the street from where she and her friends planned to spend the night. She walked to a restaurant and had dinner and drinks with her friends before walking to a nightclub. At the nightclub, she met defendant. Twice that evening, defendant tried to kiss the complainant and had his arms on her. After leaving the nightclub at 2:00 A.M., she walked with her friends to the hotel where they planned to spend the night. A number of individuals from the nightclub, including defendant, came to the room. According to the complainant, she went to her car to retrieve her bags. As she was opening the rear driver's side door to get her bags, she noticed that defendant was behind her. Defendant grabbed her and pushed her into the back seat of the car.

The complainant testified that defendant began kissing and fondling her and told her that they were "going to have a good time." Defendant locked all the car doors and told the complainant that they were going to "do it." When the complainant resisted, defendant began punching her in the face and in the stomach with his fists. Defendant removed the complainant's clothing and sexually assaulted her. Defendant then attempted to strangle the complainant, and

she passed out. She awakened to find defendant putting her in the trunk of her car through the fold-down back seat.

Defendant then drove for a long time before stopping the car and pulling the complainant from the trunk. Defendant told the victim that he was carrying her into the hospital. Instead, he took her inside a home, laid her on a couch, and sexually assaulted her. The complainant again resisted, and defendant told her to shut up. Defendant then told the complainant that she was "a mess" and took her into the shower with him so she could clean off. When they got out of the shower, defendant again sexually assaulted the complainant.

The complainant asked to leave, but defendant put his arm on top of her and told her to go to sleep. The complainant tried to move to get up, and defendant again sexually assaulted her. After the last incident, the complainant was able to get up and get dressed. Defendant then taped her mouth, bound her hands and feet together, put wire around her neck, and put a blanket over her head. Defendant then struck her over the head, on the elbow, and on her back with what "felt like a bat." She passed out, and awakened when defendant lifted her up to put her into a hall closet.

The complainant eventually worked herself free of the tape and wire around her mouth and hands and was able to "hop" out the door of the apartment and scream for help.

Defendant testified that he met the complainant at a nightclub and that they danced and drank together all night until they left the bar. Defendant did not

deny having sex with the complainant, but rather claimed that it was consensual.

Defendant first argues that the trial court abused its discretion in denying his motion for a new trial, a motion based in part on a claim of ineffective assistance of counsel. Defendant contends that his attorney failed to call Vincent Duncan as a witness to corroborate defendant's testimony that he and the complainant were affectionate in the nightclub and embracing romantically in the parking lot.

To establish a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance fell below an objective standard of reasonableness and that counsel's representation prejudiced him so as to deprive him of a fair trial. *People v Williams*, 240 Mich App 316, 331; 614 NW2d 647 (2000). A defendant must show that, but for the error, the result of the proceedings would have been different and that the proceedings were fundamentally unfair or unreliable. *Id.* Furthermore, this Court presumes that a defendant received effective assistance of counsel, and the defendant bears a heavy burden to prove otherwise. *Id.* Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy. *People v Mitchell*, 454 Mich 145, 163; 560 NW2d 600 (1997). This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight. *People v Barnett*, 163 Mich App 331, 338; 414 NW2d 378 (1987).

Here, defense counsel testified that he did not call Duncan to testify at trial because Duncan was too drunk during the course of events to remember any-

thing of significance. The trial court found that defense counsel's decision not to call Duncan was trial strategy rather than inadvertent. Further, the failure to call Duncan did not affect the outcome of the trial. Duncan did not witness any of the alleged events for which defendant was convicted. Duncan last saw defendant with the complainant in South Haven before any of the alleged events transpired. Thus, even if the jury believed Duncan's proposed testimony that defendant and the complainant were embracing outside her car, the jury could still have found that defendant beat and twice sexually assaulted the complainant in Kalamazoo and drove off with her car. The record does not demonstrate that defense counsel's performance was deficient.

Next, defendant asserts that the sentences imposed were disproportionate. Sentencing issues are reviewed by this Court for an abuse of discretion by the trial court. *People v Coles*, 417 Mich 523, 537; 339 NW2d 440 (1983); *People v Rice (On Remand)*, 235 Mich App 429, 445; 597 NW2d 843 (1999). A trial court abuses it discretion when it imposes a sentence that is not proportional to the seriousness of the circumstances surrounding the offense and the offender. *People v Merriweather*, 447 Mich 799, 806; 527 NW2d 460 (1994); *People v Milbourn*, 435 Mich 630, 635-636, 654; 461 NW2d 1 (1990).

Defendant contends that the sentence is not proportionate to the offender because he is only twenty-two years old and capable of rehabilitation and because he had never before committed these types of crimes. However, the record does not support defendant's contentions. The presentence information report indicates that defendant has a history of vio-

lence toward women. In May 1992, defendant was convicted of malicious destruction of property over $100 when he threw a beer bottle and broke his ex-girlfriend's car windshield during a jealous drunken rage. The report indicates that his ex-girlfriend had a restraining order against him. In June 1992, defendant was charged with making threatening telephone calls to the same ex-girlfriend. In December 1994, defendant was charged with malicious destruction of property over $100 for slashing his ex-wife's tires. At the time, the ex-wife had a restraining order against defendant. Defendant's past record indicates that, despite his involvement with the judicial system, he has continued to engage in abusive behavior toward women. Indeed, the present crimes were more violent and severe than any previous offenses, an indication that defendant lacks rehabilitative potential. On the basis of the facts of this case, we are not persuaded that defendant's sentence violates the principle of proportionality. Consistent with the Supreme Court's opinion in *Merriweather, supra,* we find no abuse of discretion in the sentencing court's goal of keeping defendant away from society for the rest of his life. Accordingly, we affirm defendant's sentence.

In an issue of first impression, defendant also contends that the sentencing court's recommendation on the judgment of sentence that defendant not be granted parole violated MCL 791.234(6)(b), now MCL 791.234(6)(c) the so-called "lifer law," which provides that defendants sentenced to paroleable terms are subject to the jurisdiction of the Parole Board and may be released on parole subject to certain conditions. Specifically, subsection 34(6)(b) provided, in pertinent part:

> A parole shall not be granted a prisoner so sentenced until after a public hearing . . . . Notice of the public hearing shall be given to the sentencing judge, or the judge's successor in office, and parole shall not be granted if the sentencing judge, or the judge's successor in office, files written objections to the granting of parole within 30 days of receipt of the notice of hearing. The written objections shall be made part of the prisoner's file.

The sentencing judge explained his reasoning in placing the "no parole" recommendation in the judgment of sentence:

> I want this to be very clear, no person sentenced to life in prison may be paroled, under current law, without permission of the sentencing judge. I, frankly, don't expect to be around when that permission is sought. But, I want this record to be very clear, that my predecessor [sic] should take full measure of his or her time to review this record. And, it is my strong and firm recommendation that you shall never be paroled, under any circumstances whatsoever.

Defendant asserts that the sentencing judge's comment regarding "no parole" in the judgment of sentence contradicts the procedure set forth in subsection 34(6) and renders the "within 30 days of receipt of the notice of hearing" language meaningless. We disagree. The plain language of subsection 34(6) specifically refers to the filing of "written objections to the granting of parole within 30 days of receipt of the notice of hearing." A sentencing judge's written comment in a judgment of sentence, made at the time of sentencing, clearly is not equivalent to the filing of "written objections . . . within 30 days of receipt of the notice of hearing." Hence, notwithstanding the inclusion of such a recommendation in the judgment

of sentence, a sentencing judge[1] who wants to object to a grant of parole is required to file written objections in accordance with subsection 34(6). Accordingly, we conclude that the sentencing judge's comment in the judgment of sentence does not violate subsection 34(6).

Affirmed.

---

[1] Or his successor in office.