# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ADRIAN ORTA ESTRADA,

        Defendant-Appellant.

UNPUBLISHED
August 25, 2016

No.  326919
Ingham Circuit Court
LC No.  14-000450-FC

Before:  OWENS, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) (person under 13), and one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (person under 13).  Defendant received an upward departure sentence of 81 to 135 months' imprisonment for the CSC-I counts and 57 to 180 months' imprisonment for the CSC-II count, all to be served concurrently. Defendant appeals as of right.  We affirm his convictions but remand for further sentencing proceedings consistent with this opinion.

## I.  FACTS

Defendant's conviction arises from the sexual assault of his stepdaughter, DH, in or around 2003.  Defendant met DH's mother in Mexico in 2000 and brought her, DH, and DH's sister to Michigan in 2002.  Defendant and DH's mother were married in 2003.  DH, 18 at the time of trial, remembered living in a bedroom that contained a bunk bed, with her and her sister sleeping on the top bed and defendant and her mother sleeping on the bottom.  DH recalled an incident either late at night or early in the morning when defendant told her to come to the bottom bed.  "I was facing the TV," she recalled.  "And all I can remember is he would like run his hands all over me."  DH stated that defendant touched her with his hands "[o]n my chest and my lower part of my body" and indicated that "lower part of the body" meant vagina.  DH said that was the first time something like that happened to her and that she did not tell her mother because she was scared.

DH recalled a different incident in the bedroom when defendant covered the side of the bottom bunk bed with a pink blanket.  DH stated, "I was laying down and he was on top of me." DH said that defendant's pants were off "[a]nd he was rubbing on me" and that "a white liquid

-1-

fell on my stomach," which she now knows was "[s]perm." DH said that defendant "rubbed me like those other times. And he would just like rub my private area." She answered affirmatively when asked if defendant "put his finger in you." She did not know if defendant put his penis inside of her because she "always had my eyes shut."

DH also described an incident in the home's bathroom. DH said that defendant "took off my underwear and he was rubbing on me" with his hands. When asked specifically where defendant placed his hands, DH stated, "It hurt. So I know he went inside me, because it hurt really bad and it stung."

In November 2003, DH's mother was informed by defendant's stepmother that defendant previously "touched' his half-sisters, CE and AE.[1] One of defendant's half-brothers, "Omar," came to defendant's home later that day, accompanied by three men with baseball bats. Defendant waited until they left and then left for Chicago. Defendant testified to leaving Chicago and traveling to Mexico to see his father and then to living in San Diego, California with his mother until 2009. He said he worked briefly in Tennessee before working on a farm in Elsie, Michigan for two years. He explained that he then returned to California in July 2012 and "went to trucking school." He drove trucks around the country before giving his "CDL" to a law enforcement officer in Nebraska who subsequently arrested him. Defendant denied that he "attempt[ed] to run from this issue."

## II. ANALYSIS

### A. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Defendant first argues that he was denied effective assistance of counsel at trial Although defendant filed a motion to remand with this Court to address the claim, he did not move for a new trial or an evidentiary hearing below. The issue is unpreserved. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Thus, our review is "limited to mistakes apparent on the record." *Id.*

"A claim of ineffective assistance of counsel is a mixed question of law and fact." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id.* "If review of the record does not support the defendant's claims, he has effectively waived the issue of effective assistance of counsel." *People v Sabin* (*On Second Remand*), 242 Mich App 656, 659; 620 NW2d 19 (2000).

"There is a presumption that counsel was effective, and a defendant must overcome the strong presumption that counsel's challenged actions were sound trial strategy." *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015). "To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) that his attorney's performance was

---

[1] At trial, AE, CE, and defendant's stepmother testified pursuant to MCL 768.27a.

objectively unreasonable in light of prevailing professional norms; and (2) that he was prejudiced by the deficient performance." *People v Walker*, 497 Mich 894, 895; 855 NW2d 744 (2014). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Garza*, 246 Mich App 251, 255; 631 NW2d 764 (2001). In order to demonstrate prejudice, "the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001).

Defendant first argues that defense counsel erred by not moving to strike a hearsay statement offered by DH's mother. During the direct examination of this witness, the following exchange occurred regarding DH's disclosure of defendant's transgressions:

> *Prosecutor*: Without saying what she said, did she tell you details?
>
> *Witness*: Just told me that she talked [sic] to her private part. And she said that he would put liquid in my daughter's stomach.
>
> *Defense counsel*: Your Honor—
>
> *The court*. Just a minute. That will be hearsay. She can only tell us that she was told something and that [sic] what did she do as a result of having that information. She can't tell us what [DH] told her.

Defense counsel did not err in not moving the court to strike the hearsay statement because the court did it for him. Essentially, the court gave a curative instruction to the jury that the statement was inadmissible. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998) ("It is well established that jurors are presumed to follow their instructions.") Moreover, defense counsel may not have wanted to draw additional attention to the statement, see *People v Griffin*, 235 Mich App 27, 37; 597 NW2d 176 (1999), overruled on other grounds *People v Thompson*, 477 Mich 146; 730 NW2d 708 (2007), or risk admonishment by the court for asking it to do what it had already done. It is presumed that counsel's action was sound trial strategy. *Cooper*, 308 Mich App at 80.

Next, defendant argues that defense counsel was ineffective for "opening the door" to transcripts of an interview of DH and AE being read to the jury. Defense counsel, referring to the interview transcripts, questioned the retired detective who was involved in the interview about "gaps in the statement." The detective explained that sometimes "the girls are speaking very quietly" and opined that "in this particular situation the problem was they couldn't make out what they were saying." Defense counsel went on to ask the detective if he could provide context to several parts of the transcripts for both DH and AE that contained "blanks." Counsel

also asserted that a couple of the questions posed were leading. On redirect examination, the detective read the transcripts in their entirety pursuant to MRE 106.[2]

Defense counsel may have reasonably determined that the only way to undermine DH's testimony was to suggest to the jury that the first official interview of DH was improperly conducted and influenced her subsequent recitations of the events. Defense counsel heavily implied such during his cross-examination of the doctor who examined DH in February 2004. And during closing argument, counsel asserted, "I have been doing this for years. And I have never seen such a shoddy interview by detectives." "Defense counsel is given wide discretion in matters of trial strategy [precisely] because many calculated risks may be necessary in order to win difficult cases." *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2008).

Given the circumstances, the presumption that counsel acted strategically stands and we will not "second guess" that strategy. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). See also *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996) ("The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel"). Moreover, statements made by DH in the interview were largely consistent with her testimony at trial and the statements she made to the doctor. Defendant did not suffer outcome-determinative prejudice from the introduction of cumulative evidence. See *People v Rodriquez*, 216 Mich App 329, 332; 549 NW2d 359 (1996).

Defendant also argues that defense counsel's performance was deficient because he forgot to ask defendant the "ultimate question" of whether he committed the charged crimes when he testified. When asked by the trial court if there were follow-up questions to juror questions presented to defendant, defense counsel answered, "Just one general question that I forgot to ask." After an off-the-record discussion, the trial court explained that "[defense counsel] wanted to ask [defendant] had he sexually assaulted," which the court did not allow because it was unrelated to any of the juror questions.

"Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy[.]" *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Plaintiff's contention that "it appears trial counsel purposely did not ask whether he committed the crime and that is a matter of trial strategy" is belied by the record. Specifically, defense counsel admitted he simply "forgot to ask" defendant the question. Although defense counsel's failure to ask defendant the "ultimate question" could be considered reasonable trial strategy, we will not so characterize it in light of this admission.[3]

---

[2] MRE 106 provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."

[3] Defendant also maintains that the trial court's decision to not allow defense counsel to ask the follow-up question "rendered, or added to the ineffectiveness of counsel in this case." MCR

But defendant does not explain how he suffered outcome-determinative prejudice from this error. It was clear from opening argument that defendant was denying that he sexually assaulted the victim. Given the substantial evidence presented against defendant, it cannot be said that his mere denial of the allegations would have made it more likely than not that the jury would have acquitted him of the crimes charged. *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015).

Defendant also suggests that his trial counsel erred by not obtaining his employment records. "The failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *People v Grant*, 470 Mich 477, 493; 684 NW2d 686 (2004). Yet defendant concedes that this alleged error "was probably not outcome determinative." Moreover, the record does not reveal what investigatory efforts defense counsel made, and therefore defendant failed to establish the factual predicate for this alleged error. *Carbin*, 463 Mich at 600.

## B. RESENTENCING

Defendant argues, plaintiff agrees, and we conclude that because the trial court was not aware of the significant changes to come in sentencing procedure when defendant was sentenced, remand for proceedings consistent with *United States v Crosby*, 397 F3d 103 (CA 2, 2005), are appropriate. See *People v Steanhouse*, 313 Mich App 1, 48; 880 NW2d 297 (2015).

Affirmed but remanded for further sentencing proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Donald S. Owens
/s/ David H. Sawyer

---

2.513(I) provides in part that "[t]he court may permit the jurors to ask questions of witnesses" and mandates that the court "employ a procedure" to provides certain safeguards, none of which concern follow-up questions. "[T]he term 'may' presupposes discretion and does not mandate an action." *In re Weber Estate*, 257 Mich App 558, 562; 669 NW2d 288 (2003). For those reasons, there is no basis for concluding that the court somehow erred by adhering to its policy of only allowing follow-up questions related to the juror questions.