# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DAMON ERWIN BROWN,

Defendant-Appellant.

UNPUBLISHED
November 21, 2017

No. 333313
Wayne Circuit Court
LC No. 16-000497-01-FC

Before: BECKERING, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for two counts of armed robbery, MCL 750.529, and one count of assault with intent to do great bodily harm ("AWIGBH"), MCL 750.84. He was sentenced to 15 to 30 years' imprisonment for each armed robbery conviction and 6 to 10 years' imprisonment for the AWIGBH conviction. We affirm.

## I. BACKGROUND FACTS

The robbery and assault occurred at a fast-food restaurant on West Eight Mile Road in Detroit. At about 11:30 p.m., after the restaurant closed, three men wearing black masks and hoods confronted employees Amdadur Rahman-Shaon ("Shaon") and Awlad Hussain ("Hussain") behind the restaurant as they were taking out the garbage. One of the men, whom both employees recognized as defendant, targeted Shaon and forced him back into the restaurant. The other two men, one of whom brandished a gun and pointed it at Hussain, forced Hussain back into the restaurant. Once inside, defendant threatened Shaon with a box cutter, demanded Shaon give him the money in the register, punched him in the forehead, and sliced Shaon's face with the box cutter. Defendant then grabbed the money from the counter, where Shaon had been counting it, and all three men ran out the back door.

Both employees recognized defendant because he had been coming into the store daily for approximately eight months, asking for food and "bothering" them. They had called the police several times regarding defendant's harassing behavior, and the manager had even taken a picture of defendant. In fact, the manager provided the picture to Hussain, who then gave it to the police when they arrived at the scene after the robbery. The employees also stated they recognized defendant from their prior contacts with him, specifically his voice and his eyes, and that they knew him as "Eric." Several days later, the police showed both Shaon and Hussain a

-1-

photographic array, and both employees identified defendant as the assailant with the box cutter. They also identified defendant at trial.

## II. DUE PROCESS CLAIM

Defendant first argues that his due process rights were violated when the trial court failed to suppress Shaon's and Hussain's in-court identifications of defendant because the identifications were tainted considering both witnesses saw the picture of defendant before identifying him in a photographic array. We disagree.

Defendant did not object to the in-court identifications of the two witnesses. The issue is, therefore, unpreserved. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001), citing MRE 103(a)(1)[1] (some citations omitted).[2] We review claims that evidence should have been suppressed, as well as the underlying constitutional issues, de novo. *People v Henry (After Remand)*, 305 Mich App 127, 160; 854 NW2d 114 (2014). Factual findings made by the trial court are reviewed for clear error. *Id*. When such issues are unpreserved, we review them for plain error affecting the defendant's substantial rights. *Id*.

"A photographic identification procedure violates a defendant's right to due process when it is so impermissibly suggestive that it creates a substantial likelihood of misidentification." *People v Woolfolk*, 304 Mich App 450, 457; 848 NW2d 169 (2014). Whether a particular procedure violates due process is dependent on the totality of the circumstances. *Id*. However, individual constitutional rights, both federal and state, were put into place to prevent *governmental* excesses and infringements. *Woodland v Michigan Citizens Lobby*, 423 Mich 188, 204-205; 378 NW2d 337 (1985). The concept of limiting the applicability of guaranteed constitutional rights for individuals to governmental actors "is deeply rooted in constitutional tradition and is consistent with the very nature of our constitutional democracy."

---

[1] MRE 103(a)(1) provides:

> **(a) Effect of erroneous ruling.** Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
>
> (1) *Objection.* In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context.

[2] Citing *People v McCray*, 245 Mich App 631, 638; 630 NW2d 633 (2001), defendant argues that his objection to the use of the individual photo at trial was sufficient to preserve his objection to the in-court identification. Neither *McCray* nor any other case we have found supports the proposition that objection to one piece of evidence preserves the issue of whether another piece of evidence was properly admitted, even when both were offered to prove the same issue—in this case, identification. Even different bases for objecting to the same evidence, if not specifically stated at trial, are not preserved. See *People v Douglas*, 496 Mich 557, 574; 852 NW2d 587 (2014).

*Id*. at 205. As our Supreme Court noted in 1985, the Declaration of Rights provisions of the Michigan Constitution "have never been interpreted as extending to purely private conduct." *Id*. This has not changed. See *Scalise v Boy Scouts of America*, 265 Mich App 1, 20; 692 NW2d 858 (2005) ("[T]he Michigan Constitution, like the United States Constitution, only protects individuals from discriminatory 'state action.' "). See also *Nat'l Pride at Work, Inc v Governor of Michigan*, 274 Mich App 147, 167; 732 NW2d 139 (2007) (stating "the provisions in article 1 of the Michigan Constitution contemplate limitations of *government* conduct") (emphasis added).

The police conducted the identification procedure by showing each of the two witnesses a photographic array a week after the robbery, but prior to taking defendant into custody. Both witnesses identified defendant as their assailant. Defendant has no complaint about the manner in which the identification was conducted. He objects only to the witnesses having seen an individual picture of defendant before they identified defendant in the photographic array and in court—a picture that a manager took and that Hussain gave to the police the night of the robbery. Defendant admits that there was no state action involved but argues that it makes no difference who showed the picture to the witnesses because the result was the same. Defendant fails to provide legal support for this argument, and we are aware of none. Therefore, he has abandoned this issue. *People v Coy,* 258 Mich App 1, 19-20; 669 NW2d 831 (2003). Regardless, because there was no state action in connection with the individual picture shown to the witnesses, defendant's claim that his due process rights were violated is meritless.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that he was denied his constitutional right to effective counsel when the defense attorney failed to object to the in-court identifications provided by Shaon and Hussain. We disagree.

Because defendant did not move for a new trial or an evidentiary hearing, this issue is not preserved. See *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). When a defendant fails to develop a record on his ineffective assistance of counsel claim in the trial court, our review is limited to the record as it exists. *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000). Ineffective assistance of counsel claims present mixed questions of law and fact. *People v Douglas*, 496 Mich 557, 566; 852 NW2d 587 (2014). We review factual questions for clear error and review questions of constitutional law de novo. *Id*.

While a criminal defendant has a fundamental right to effective assistance of counsel, the burden is on the defendant to prove that he did not receive effective assistance from his counsel. *Heft*, 299 Mich App at 80. "[A] defendant must show that his counsel's performance fell below an objective standard of reasonableness and that counsel's representation prejudiced him so as to deprive him of a fair trial." *People v Garza*, 246 Mich App 251, 255; 631 NW2d 764 (2001).

There was no basis for an objection to the in-court identifications of Shaon and Hussain because there was no state action involved in the witnesses having seen the individual picture of defendant. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793

NW2d 120 (2010). Therefore, defendant has failed to establish that he was denied the effective assistance of counsel.

## IV. SENTENCING

Defendant next argues that, in scoring Offense Variable ("OV") 14, the trial court used facts neither admitted by defendant nor found beyond a reasonable doubt by the jury, in violation of the Sixth Amendment. Defendant further argues that the trial court improperly based his sentence on the fact that he refused to admit guilt. Again, we disagree.

The factual determinations made by a trial court for the purpose of scoring the sentencing guidelines must be supported by a preponderance of the evidence and are reviewed for clear error. *People v Dickinson*, ___ Mich App ___, ___; ___ NW2d ___ (2017) (Docket No. 332653); slip op at 9. Whether the facts found are sufficient to support the scoring decision requires statutory interpretation and application and is, therefore, reviewed de novo. *Id.* Challenges to a trial court's sentencing guidelines calculation on the basis that facts were used that were neither admitted by the defendant nor proven to a jury beyond a reasonable doubt present a constitutional law question that is reviewed de novo. *People v Lockridge*, 498 Mich 358, 373-374; 870 NW2d 502 (2015); *People v Stokes*, 312 Mich App 181, 192; 877 NW2d 752 (2015). We also review de novo the issue of whether a sentencing court based a sentence on the defendant's statements of innocence after conviction. *People v Wesley*, 428 Mich 708; 712-713; 411 NW2d 159 (1987).

Although the sentencing guidelines are advisory only, a trial court must still determine each defendant's minimum sentence range by scoring the variables. *Dickinson*, ___ Mich App at ___, slip op at 10, n 3, citing *Lockridge*, 498 Mich at 398.[3] MCL 777.22 requires that OV 14 be scored for all felony offenses. *Dickinson*, ___ Mich App at ___, slip op at 10. MCL 777.44 governs how OV 14 is to be scored, and states, in relevant part:

> (1) Offense variable 14 is the offender's role. Score offense variable 14 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
> (a) The offender was a leader in a multiple offender situation ......10 points
>
> (b) The offender was not a leader in a multiple offender situation ..0 points

---

[3] In his brief, defendant concedes that "there may have been testimony during the Defendant's trial indicating that he was the leader," but he contends that the trial court incorrectly scored 10 points under OV 14 because "nothing in the jury's verdict specifically implied a finding, by the jury, beyond a reasonable doubt, that Defendant was the leader of the three robbers." Defendant's argument misconstrues *Lockridge*. Because the guidelines minimum sentence range is now advisory only, the trial court is still required to determine the applicable guidelines range and may rely on facts beyond those admitted by the defendant or found by the jury beyond a reasonable doubt. *Lockridge*, 498 Mich at 364, 391-392.

Because the Legislature did not define the word "leader," we have consulted dictionary definitions and determined that "[t]o 'lead' is defined in relevant part as, in general, guiding, preceding, showing the way, directing, or conducting." *Dickinson*, ___ Mich App at ___; slip op at 10, citing *People v Rhodes (After Remand)*, 305 Mich App 85, 90; 849 NW2d 417 (2014). This Court in *Rhodes* "concluded that, for purposes of an OV 14 analysis, a trial court should consider whether the defendant acted first or gave directions, 'or was otherwise a primary causal or coordinating agent.' " *Dickinson*, ___ Mich App at ___; slip op at 10, quoting *Rhodes*, 305 Mich App at 90.

"When calculating the sentencing guidelines scores, a trial court may consider all of the evidence in the trial court record." *Dickinson*, ___ Mich App at ___; slip op at 9. This includes, but is not limited to, "the contents of a presentence investigation report, admissions made by a defendant during a plea proceeding, or testimony taken at a preliminary examination or trial." *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012), quoting *People v Ratkov (After Remand)*, 201 Mich App 123, 125; 505 NW2d 886 (1993). In scoring OV 14, a trial court must consider the "entire criminal transaction." *Dickinson*, ___ Mich App at ___; slip op at 11, citing MCL 777.44(2)(a). As noted, we review for clear error the trial court's factual determinations, and such facts must be supported by a preponderance of the evidence. *Id*. at ___; slip op at 9.

At the sentencing hearing in this matter, defendant argued that OV 14 should be scored at 0 points because the leader was the one who entered the store with a gun in his hand, not defendant. The court ruled that defendant was a leader because the evidence established that he slashed Shaon and actually escaped with the cash, whereas the other two participants did nothing but prevent Hussain from interfering with defendant. In other words, defendant's actions were those of a primary coordinating agent. See *Dickinson*, ___ Mich App at ___; slip op at 10. The trial court further inferred that defendant was the leader from testimony that defendant had been in the store frequently during the previous year; therefore, he likely became familiar with the activities conducted during closing, and informed or guided his accomplices accordingly. See *id*. at ___; slip op at 10. A preponderance of the evidence supports the trial court's finding that defendant was a leader under the circumstances presented, and it correctly scored OV 14 at 10 points.

Defendant is also incorrect in his contention that the trial court was improperly influenced by his refusal to admit guilt. Factors on which a trial court's sentencing decision may be based include "(1) the potential for the reformation of the offender, (2) the protection of society, (3) the discipline of the wrongdoer, and (4) the deterrence of others from committing like offenses." *Wesley*, 428 Mich at 712-713. "A sentencing court cannot base a sentence even in part on a defendant's refusal to admit guilt." *People v Payne*, 285 Mich App 181, 193-194; 774 NW2d 714 (2009), quoting *People v Dobek*, 274 Mich App 58, 104; 732 NW2d 546 (2007). In examining whether a trial court improperly considered the defendant's refusal to admit guilt, this Court looks to three factors: "(1) the defendant's maintenance of innocence after conviction; (2) the judge's attempt to get the defendant to admit guilt; and (3) the appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe." *Payne*, 285 Mich App at 194, quoting *Wesley*, 428 Mich at 713. If these three factors are indicated in the record, a reviewing court may find that the sentence was improperly influenced by the defendant's refusal to admit guilt. *Wesley*, 428 Mich at 713. "If, however, the record shows that

the court did no more than address the factor of remorsefulness as it bore upon defendant's rehabilitation, then the court's reference to a defendant's persistent claim of innocence will not amount to error requiring reversal." *Id*.

In this case, defendant continued to maintain his innocence at sentencing. The trial court responded by asking him whether he was familiar with AA, to which defendant responded in the negative. The judge next told defendant that the first step toward rehabilitation is for an alcoholic to acknowledge his or her alcoholism, then said, "You apparently don't believe that." The judge's comment was followed immediately by a statement of the sentence that the court imposed. It is unreasonable to characterize this comment, as defendant does, as an attempt to persuade defendant to admit guilt. The statement contains no language of persuasion. The trial court did not pause to ask defendant if he wanted to reconsider admitting guilt. Nor is it reasonable to infer from that statement, as defendant does, that the sentence would have been lighter had defendant admitted guilt. There are no words in the statement that support such an inference.

Defendant's presentence investigation report indicates that he had no history of alcoholism. Therefore, it seems clear that the trial court's remark was meant to be an analogy, comparing defendant's continued claim of innocence to an active alcoholic's refusal to admit that he or she has a drinking problem. It is fair to say that it was an indication of the judge's opinion that defendant would have a greater potential for rehabilitation if he acknowledged his actions, or even that it was an expression of pessimism as to defendant's chance of rehabilitation based on his continued claim of innocence. This is an appropriate sentencing factor. See *Wesley*, 428 Mich at 713. Additionally, nothing in the record indicates that the judge thought defendant should be punished more harshly because he maintained his innocence. There is, in fact, some indication to the contrary. If the trial court wished to punish defendant more harshly for refusing to admit guilt, it seems unlikely that the court would have informed defendant that the court would not oppose his participation in a special alternative incarceration unit because of his youth. Because the trial court did not attempt to convince defendant to admit guilt, and nothing created the appearance that sentencing would have been more lenient had defendant done so, defendant is not entitled to resentencing on this basis.

Affirmed.

/s/ Jane M. Beckering
/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron