# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CARLOS VARNADO,

        Defendant-Appellant.

UNPUBLISHED
May 15, 2018

No. 336142
Wayne Circuit Court
LC No. 16-003043-01-FH

Before: BORRELLO, P.J., and SAWYER and JANSEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of carrying a concealed weapon ("CCW"), MCL 750.227, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony ("felony-firearm"), second offense, MCL 750.227b. Defendant was sentenced, as a third habitual offender, MCL 769.11, to 2 to 10 years' imprisonment for the CCW conviction, 2 to 10 years' imprisonment for the felon in possession of a firearm conviction, and five years' imprisonment for the felony-firearm, second offense, conviction. We affirm.

This case arises out of a police chase that took place following a traffic stop. Defendant was the passenger in a car that two Detroit Police officers attempted to stop after observing that defendant was not wearing a seatbelt. Defendant jumped out of the car and ran from the police. One of the officers pursued defendant and saw him discard a handgun in a patch of overgrown brush that bordered a vacant lot. Defendant was subsequently apprehended and arrested.

Defendant argues that he was denied the effective assistance of counsel at trial for a number of reasons, which are set forth herein. We disagree.

To preserve a claim of ineffective assistance of counsel, a defendant must move for a new trial or a *Ginther*[1] hearing in the trial court. *People v Payne*, 285 Mich App 181, 188; 774 NW2d

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

714 (2009). Although defendant filed a motion to remand with this Court, defendant failed to move for a new trial or for a *Ginther* hearing in the trial court. The issue is thus unpreserved, and this Court's review is "limited to mistakes apparent on the record." *Payne*, 285 Mich App at 188. When examining a claim of ineffective assistance of counsel, "[a] judge must first find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v Johnson*, 293 Mich App 79, 90; 808 NW2d 815 (2011). "This Court reviews for clear error a trial court's factual findings, while we review de novo constitutional determinations." *Id*. Unpreserved ineffective assistance of counsel claims are reviewed for "errors apparent on the record." *Id*.

Defendant first argues that he was denied the effective assistance of counsel because defense counsel's opening statement failed to highlight potentially exculpatory facts and advised the jury to "keep an open mind" during the proceedings. We disagree.

To establish a claim of ineffective assistance of counsel, a defendant must demonstrate "that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Defense counsel is presumed to be effective, *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007), and defendant shoulders a heavy burden because he is required to "overcome a strong presumption that counsel's performance constituted sound trial strategy," *People v Riley (After Remand)*, 468 Mich 135, 140; 659 NW2d 611 (2003).

In his opening statement, defense counsel stated as follows:

> I'm not here to quote the Bible or Shakespeare or anything like that, and arguments that [the prosecution] made and arguments that I made, as the [c]ourt will instruct you, are not evidence.

> I'd just ask you to keep an open mind, follow the instructions that the judge gives you all and base your determinations on what you hear versus what I may say or what the prosecut[ion] may say. Thank you.

Defendant cites no authority supporting his assertion that defense counsel's decision to make a brief opening statement constituted ineffective assistance of counsel. Ultimately, even a total failure to give an opening statement " 'can rarely, if ever, be the basis of a successful claim of ineffective assistance of counsel,' " because decisions regarding opening statements involve " 'a subjective judgment on the part of trial counsel[.]' " *Payne*, 285 Mich App at 190 (citation omitted). Nothing in defense counsel's opening statement was inaccurate, misleading, or prejudicial to defendant, and there is no indication that defense counsel's performance fell below an objective standard of reasonableness.

Further, defendant does not explain how the outcome of his case would have been different had defense counsel given a more lengthy opening statement. The prosecution gave a broad opening statement that highlighted the basic facts of the case and the legal standards involved. Defense counsel may not have wanted to reiterate the facts that had already been

mentioned by the prosecution or risk losing the jury's attention by giving a lengthy opening statement. Defense counsel's decision to make only a brief opening statement was a matter of trial strategy, and a more thorough opening statement would not have changed the outcome of the case.

Defendant next argues that defense counsel did not properly examine him when he chose to testify. We disagree.

"Decisions regarding . . . how to question witnesses are presumed to be matters of trial strategy[.]" *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). This Court does not second-guess the decisions of trial counsel on matters of trial strategy with the benefit of hindsight. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). Defendant specifically contends that he was not afforded the opportunity to explain to the jury why he ran from the police, nor was he able to state that he never possessed the handgun. Defendant argues that defense counsel's failure to open these lines of questioning denied him the effective assistance of counsel. However, contrary to defendant's contention, the record shows that defendant was questioned about both subjects on direct examination. Regarding defendant's decision to run from the police, defense counsel asked:

> *Q*. A couple of questions, if I may. Why did you run from the police?
>
> *A*. Because the person I was in the car with said he had some money, and he like [sic] I'm about to run . . . . He was about to stop, and then he didn't stop and then he went to like the little—the corner of like a little, I want to say, like a driveway that used to be there.

Regarding defendant's assertion that he never possessed a handgun, defense counsel asked:

> *Q*. Okay. So you're saying, your testimony here is today [sic] you were never in possession of this weapon that [the prosecution] produced here, correct?
>
> *A*. No. I never was in possession of a weapon. That's why my fingerprints aren't on it.

Defendant claims that he was never given the opportunity to explain either of the aforementioned elements of the events that led to his arrest, but the record shows that defendant's claim is plainly untrue. Defense counsel's line of questioning with regard to defendant gave defendant the opportunity to explain his side of the story and refute the narrative of events given by the prosecution's witnesses. Thus, defense counsel's method of questioning did not fall below an objective standard of reasonableness and did not unfairly prejudice defendant.

Defendant also argues that defense counsel failed to highlight the lack of direct evidence during trial, including the fact that no dash-cam surveillance video was retrieved from the scout car and that defendant's fingerprints were not found on the handgun. Again, we disagree.

"Decisions regarding what evidence to present and whether to . . . question witnesses are presumed to be matters of trial strategy." *People v Garza*, 246 Mich App 251, 255; 631 NW2d 764 (2001). Contrary to defendant's assertion, the record shows defense counsel addressed both of the subjects that defendant believes were overlooked by defense counsel during his cross-examination of the prosecution's witnesses, as well as during his closing argument. Defense counsel asked the arresting officer, Sergeant Timothy Barr, whether the dash-cam surveillance system in the scout car would have been recording when defendant got out of the car during the traffic stop. Sergeant Barr confirmed that the dash-cam surveillance system would have recorded the traffic stop. Defense counsel also asked Sergeant Eric Bucy, the officer in charge of the case, whether he was able to retrieve the dash-cam surveillance video. Sergeant Bucy stated that the video uploading system failed to properly upload the dash-cam video to the Detroit Police Department's central network.

Additionally, with regard to the absence of fingerprints on the handgun, defense counsel thoroughly cross-examined Lieutenant Karen Dutcher, who analyzed the handgun for latent fingerprints. Defense counsel specifically questioned Lieutenant Dutcher about whether different surface textures would affect her ability to lift a usable fingerprint, as well as if she would be able to tell whether fingerprints on the handgun had been wiped off or smudged. Lieutenant Dutcher explained that the surface texture of the gun would affect whether intact fingerprints could be recovered, and also stated that she had seen fingerprints that appeared to have been partially wiped off of certain surfaces.

Any alleged deficiency or failure to properly question a witness "only constitutes ineffective assistance of counsel if it deprives a defendant of a substantial defense." *Dixon*, 263 Mich App at 398. The record does not support defendant's assertion that defense counsel failed to elicit testimony regarding the lack of direct evidence supporting defendant's guilt. Defense counsel questioned the prosecution's witnesses regarding the absence of the dash-cam surveillance video, as well as the lack of fingerprints found on the handgun, in what appeared to be a strategic effort to argue that the prosecution had not shown defendant's guilt beyond a reasonable doubt. Defense counsel also argued such directly to the jury. As previously stated, decisions regarding evidence and the questioning of witnesses are matters of trial strategy, and "this Court will not substitute its judgment for that of counsel regarding matters of trial strategy[.]" *Garza*, 246 Mich App at 255. There is no evidence that defense counsel failed to zealously advocate for his client. Defense counsel comprehensively cross-examined the prosecution's witnesses and attempted to establish reasonable doubt with regard to defendant's guilt. *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). The record indicates that defense counsel was engaged in sound trial strategy, and thus, defendant was not deprived of a substantial defense, nor was he otherwise prejudiced by defense counsel's conduct in cross-examining the prosecution's witnesses.

Defendant next contends that he was deprived of the effective assistance of counsel because defense counsel suggested an alternative defense to the jury, namely that defendant had been framed by the police. We disagree.

"[D]ecisions regarding . . . what evidence to highlight during closing argument" is presumed to be a matter of trial strategy. *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). Defendant argues that he was improperly identified as the person possessing the handgun. Defense counsel's theory during trial, which was supported by defendant's own testimony, was that defendant was never in possession of the handgun. Defense counsel never argued that defendant's identity was at issue, and agreed that it was defendant who ran away from the police. Defense counsel only contested whether defendant dropped a handgun while fleeing. Defense counsel argued that defendant ran from the police, but that he had not possessed the handgun at any point. Thus, defense counsel's strategy was to suggest that the police fabricated the charges against defendant as retribution for his attempt to flee. In his closing argument, defense counsel chose to highlight the lack of evidence, particularly the absence of the dash-cam surveillance video and the lack of fingerprints found on the gun, as support for the argument that the gun was intentionally planted on defendant. Defense counsel stated as follows:

> Now . . . two of the most important facts here are the lack of the video, because there would be no other almost indisputable bit of evidence as to what happened if you saw it on a video . . . . [I]f there was a video here, I would be hard pressed to argue something different, but we don't have the video.

> \* \* \*

> Now, you know, police officers . . . they say . . . they don't plant evidence. They don't do this, they don't do that . . . . [Y]ou'd have to be living in a cave or a hole somewhere to realize that doesn't go on. And you know, common sense says the police are probably not thrilled when people don't cooperate with them, they run from them, so on and so forth . . . . [M]ost importantly is the fingerprint evidence or should I say the lack of it . . . . [T]here's at least seven, eight, ten surfaces here between the gun and five sides of the clip . . . . [T]here is like almost . . . no way to avoid leaving a print on that gun . . . .

> \* \* \*

> I don't know what happened here. I don't know that there's a conspiracy here or not. I don't have to prove that. The [prosecution has] to prove what they have to prove, which is each and every element of the crime by proof beyond a reasonable doubt. And this is a case where the lack of I think crucial evidence would dictate . . . finding him not guilty.

Defense counsel's theory that the police framed defendant was grounded in the lack of direct evidence showing that he possessed the handgun. Since defendant only contends that he did not possess the handgun, defense counsel's decision to argue that his charges for possession of a handgun were falsified by the police is not altogether inconsistent or irrational, because it explains how defendant could have been charged with weapons-related offenses despite

-5-

allegedly never possessing a weapon. Although the defense was unsuccessful, the mere fact that defense counsel failed to persuade the jury does not necessarily render him ineffective. *People v Solloway*, 316 Mich App 174, 190; 891 NW2d 255 (2016). Under these circumstances, defense counsel's behavior was not so lacking as to fall below an objective standard of reasonableness, and there is no indication that defendant was deprived of a substantial defense or otherwise prejudiced by defense counsel's decision to propose a theory that defendant was wrongfully framed by the police.

Finally, defendant argues that he was denied the effective assistance of counsel because defense counsel did not retrieve a copy of a surveillance video from the Detroit Detention Center ("DDC"). We disagree.

As previously stated, decisions regarding which pieces of evidence to present are matters of trial strategy. *Putman*, 309 Mich App at 348. Defendant contends that a surveillance video taken from the waiting area of the DDC contained exculpatory information that would have proven he was not guilty. The surveillance video that defendant refers to contains footage of him speaking with Officer Detrich Spidell, who was also present at the time of defendant's arrest. Officer Spidell testified as follows:

> *Q*. And what does [defendant] say to you?
>
> *A*. [Defendant] went on to explain that [he] got out of the car with [his] gun. [He] had the phone in [his] one hand, and [he] had the mag, which is slang for gun, in the other hand.

Defendant contends that he did not admit that he had a gun in his hand on the surveillance video, and that defense counsel's failure to obtain the surveillance video indicates that he failed to properly investigate defendant's case. However, defendant has not produced any evidence that a surveillance video containing audio of his interaction with Officer Spidell exists, and that he merely argues that he believes such a video exists. When questioned, Sergeant Bucy did not know if the DDC had surveillance cameras that recorded audio and video because "[the video surveillance system was] a Michigan Department of Corrections [s]ystem," which he had no control over.

There is no evidence in the record that defense counsel failed to investigate the available discovery materials provided by the prosecution, or that his representation of defendant was otherwise deficient, based on his failure to obtain a surveillance video that might not have existed to begin with. Further, if the surveillance video did exist, defense counsel may have chosen to avoid admitting it because it would not have bolstered defendant's defense, and "defense counsel is not required to make a meritless request" for the production of evidence. *People v Chelmicki*, 305 Mich App 58, 69; 850 NW2d 612 (2014). If the surveillance video had been produced and confirmed that Officer Spidell's testimony was truthful, trial counsel's ability to present a credible defense would have been gravely compromised. Moreover, even if the surveillance video showed that defendant did not admit to possessing the handgun, it would not unequivocally negate the evidence indicating that he discarded a handgun while running from the

police. Thus, the introduction of the surveillance video would not have changed the outcome of the case in defendant's favor, and defendant has ultimately failed to show that defense counsel's performance fell below an objective standard of reasonableness. Accordingly, defendant's claim is without merit.

Affirmed.

/s/ Stephen L. Borrello
/s/ David H. Sawyer
/s/ Kathleen Jansen