# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ROBERT WAYNE HAMAS,

Defendant-Appellant.

UNPUBLISHED
November 29, 2018

No. 338198
Macomb Circuit Court
LC No. 2016-002962-FC

Before: M. J. KELLY, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

Following a jury trial, defendant appeals as of right his convictions for four counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a); MCL 750.520b(2)(b); and one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a); MCL 750.520c(2)(b). The trial court sentenced defendant to concurrent terms of 300 to 672 months' imprisonment for his CSC-I convictions and 120 to 180 months' imprisonment for his CSC-II conviction. We affirm.

Defendant's convictions arise from his sexual abuse of his stepdaughter. The victim made disclosures about the abuse in 2011 and 2013, prompting investigations by Child Protective Services (CPS) and police, but these initial disclosures did not lead to criminal charges, and the victim continued to live with her mother and defendant. In 2016, as a result of a change in custody, the victim was living with her biological father, and the victim again disclosed the abuse, leading to the current charges. The victim testified at trial, describing numerous acts of sexual penetration and sexual contact perpetrated on her by defendant. The jury convicted defendant as noted earlier. Defendant now appeals as of right.

## I. INEFFECTIVE ASSISTANCE

On appeal, defendant first contends that defense counsel provided ineffective assistance by failing to consult and call an expert in child sexual abuse or, at a minimum, by failing to investigate the possibility of expert testimony. According to defendant, an expert could have evaluated the forensic interviewing procedures and other circumstances surrounding the victim's repeated disclosures of sexual abuse. Defendant maintains that such evaluation would have undermined the reliability of the victim's disclosures by revealing circumstances and procedures indicating the possibility of taint, suggestibility, memory distortion, and other flaws.

-1-

Defendant preserved his claim by filing a motion to remand in this Court. *People v Ginther*, 390 Mich 436, 444-445; 212 NW2d 922 (1973). However, a *Ginther* hearing has not been held in this case, meaning that our review is limited to mistakes apparent on the record. See *People v Solloway*, 316 Mich App 174, 188; 891 NW2d 255 (2016). "To establish ineffective assistance of counsel, defendant must show (1) that defense counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's errors, a different outcome would have resulted." *People v Jackson*, 292 Mich App 583, 600-601; 808 NW2d 541 (2011). "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). "An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Garza*, 246 Mich App 251, 255; 631 NW2d 764 (2001).

In this case, defendant's ineffective assistance claim fails because, even assuming defense counsel's investigation and decision whether to retain an expert in child sexual abuse was inadequate,[1] defendant cannot show a reasonable probability that, but for counsel's errors, a different outcome would have resulted. Specifically, the record does not support defendant's assertion that an expert would have offered testimony favorable to defendant or otherwise aided the defense's efforts to discredit the victim's allegations of sexual abuse. In attempting to establish prejudice in support of his ineffective assistance claim, defendant presents the affidavit of a clinical psychologist, Dr. Katherine Okla, Ph.D, as proof of the expert advice and testimony that could have been obtained and utilized by defense counsel. However, the affidavit does not aid defendant's position because Dr. Okla did not prepare the affidavit in connection with defendant's case, and there is no indication that Dr. Okla, or another expert, would have aided the defense in this case. In actuality, the affidavit was prepared for another individual, Donald Beson. In her affidavit, Dr. Okla specifies that she has reviewed "information provided to [her] by Robyn Frankel, defense counsel filing an appeal for Mr. Beson," and Dr. Okla states that this information provided by Beson's9 attorney "is the sole basis for [her] analysis" in the affidavit. There is absolutely no evidence that Dr. Okla reviewed the forensic interviews and other circumstances leading to the victim's disclosures in this case, that she would have been willing to testify on defendant's behalf, that her opinion of the forensic interviews and how the victim's disclosures were made would have been favorable to defendant, or that defendant's position at trial would have been aided in any way by consulting or calling Dr. Okla, or someone else, as an

---

[1] On the first day of trial, defense counsel indicated that she was unaware that the prosecutor would be calling Heather Solomon as an expert in forensic interview protocol standards and procedures. Solomon was named on the prosecutor's witness list, and the prosecutor asserted that notice of Solomon's expert status had been given months before trial. We are troubled by defense counsel's apparent failure to conduct a reasonable investigation into Solomon and the need for a defense expert to respond to Solomon's expert testimony. See *People v Trakhtenberg*, 493 Mich 38, 52-54; 826 NW2d 136 (2012).

expert witness. Absent evidence that consulting and calling an expert would have aided the defense, defendant has not established the factual predicate of his claim, and he cannot show a reasonable probability that, but for counsel's alleged error, the result of the proceedings would have been different. See *Payne*, 285 Mich App at 190; *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). Defendant's ineffective assistance claim is, therefore, without merit.

## II. MEDICAL TREATMENT EXCEPTION

Next, defendant argues that the admission of the victim's out-of-court statements to three medical doctors constituted plain error affecting defendant's substantial rights. According to defendant, the victim's statements do not fall within the medical treatment exception to the hearsay rule because the victim did not understand the need to be truthful when speaking with healthcare providers and the statements were not reasonably necessary to obtain medical diagnosis and treatment. Additionally, defendant argues that defense counsel provided ineffective assistance by filing to object to the admission of the victim's statements.

Defendant failed to raise a hearsay objection to the admission of the victim's out-of-court statements at trial, meaning that defendant's evidentiary claim is unpreserved and reviewed for plain error. See *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003). Defendant has not shown plain error. " 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "Hearsay is generally prohibited and may only be admitted at trial if provided for in an exception to the hearsay rule." *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). See also MRE 802. One of the exceptions to the hearsay rule is the medical treatment exception set forth in MRE 803(4), which states:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> * * *
>
> (4) *Statements Made for Purposes of Medical Treatment or Medical Diagnosis in Connection With Treatment*. Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment.

"The rationale supporting the admission of statements under this exception is the existence of (1) the reasonable necessity of the statement to the diagnosis and treatment of the patient, and (2) the declarant's self-interested motivation to speak the truth to treating physicians in order to receive proper medical care." *People v Garland*, 286 Mich App 1, 8-9; 777 NW2d 732 (2009). Statements may be reasonably necessary to diagnosis and treatment under MRE 803(4), "irrespective of whether the declarant sustained any immediately apparent physical injury." *People v Mahone*, 294 Mich App 208, 215; 816 NW2d 436 (2011). "Particularly in cases of sexual assault, in which the injuries might be latent, such as contracting sexually transmitted diseases or psychological in nature, and thus not necessarily physically manifested at

all, a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment." *Id.*

In terms of a declarant's self-interest in speaking the truth to healthcare providers, with regard to patients aged ten and older, there is a rebuttable presumption that the patient understands the need to tell the truth to obtain proper medical care. *Garland*, 286 Mich App at 9; *People v Van Tassel (On Remand)*, 197 Mich App 653, 662; 496 NW2d 388 (1992). In comparison, in cases involving "tender years" children under the age of 10, the admission of a hearsay statement under MRE 803(4) requires additional analysis because it is possible that a young child may not understand the necessity of speaking the truth to a physician.[2] *People v Meeboer (After Remand)*, 439 Mich 310, 323, 326; 484 NW2d 621 (1992). In particular, the trustworthiness of a statement made by a tender-years child involves consideration of the totality of the circumstances surrounding the out-of-court statement, including consideration of 10 non-exhaustive factors and any corroborating evidence for the statement. *Id*. at 324-326.

In this case, the victim made out-of-court statements relating to three medical doctors. First, the victim described defendant's acts of sexual abuse to her pediatrician, Dr. Bipin Desai, in May 2016. Although defendant claims that the victim lacked an understanding of the need to be truthful with Dr. Desai, the victim was 10 years old when she saw Dr. Desai, and as such, she is therefore subject to a rebuttable presumption that she understood the necessity of telling the truth to medical providers in order to obtain proper medical treatment and diagnosis. See *Van Tassel (On Remand)*, 197 Mich App at 662, citing MRE 803A. Defendant makes no attempt to rebut this presumption; instead, defendant's challenge to the victim's motivation to tell the truth is premised on the *Meeboer* factors, but they do not apply because the victim was not a tender-years child at the time of her examination by Dr. Desai. See *Garland*, 286 Mich App at 9; *Van Tassel (On Remand)*, 197 Mich App at 662. Accordingly, defendant has not overcome the presumption that the victim understood the need to tell the truth to Dr. Desai.

In terms of whether the victim's statements to Dr. Desai were reasonably necessary for medical treatment and diagnosis, there is no merit to defendant's assertions that the examination by Dr. Desai was motived by litigation or criminal investigation as opposed to medical treatment and diagnosis. Dr. Desai is the victim's long-standing pediatrician. He examined the victim on May 2, 2016, within a few weeks of the victim's April 10 disclosure to her grandmother and the

---

[2] In distinguishing between tender-years children and those to whom the rebuttable presumption applies, *Van Tassel (On Remand)*, 197 Mich App at 662, referred to the presumption as applying to patients "*over* the age of ten." (Emphasis added.) However, in *Van Tassel (On Remand)*, 197 Mich App at 662, we concluded that the presumption applied to individuals who were not of "tender years," and we defined "tender years" based on MRE 803A, which applies to children "*under* the age of ten." (Emphasis added). Following this reasoning, a 10-year-old child is not a "tender years" child in the context of determining whether the child understands the need to tell a medical provider the truth. Instead, a 10-year-old child is subject to a rebuttable presumption that he or she understands the need to tell the truth.

victim's last contact with defendant.[3] Dr. Desai began his evaluation of the victim by obtaining a history from the victim, during which the victim disclosed defendant's sexual abuse, including the fact that defendant touched her vaginal region and chest, that he forced her to touch him and use her mouth "down there," and that "white stuff" would come out during these events. On the basis of this history, Dr. Desai examined the victim from head to toe, including her genital and anal regions, looking for signs of injury. He also ordered a urinalysis to check for certain sexually transmitted diseases, he recommended psychological counseling, he made sure that CPS and the police were involved, and he made a referral to the University of Michigan clinic for more specialized testing and examination. On the whole, the victim's statements were reasonably necessary for Dr. Desai's treatment of the victim. That is, the victim's statements enabled Dr. Desai to assess and treat the possibility of a sexually transmitted disease, make referrals for other treatment, ensure that the victim would not be returning to an abusive home, and structure his physical examination to the type of trauma the victim described. See *Meeboer*, 439 Mich at 329-330, 334-335; *People v Duenaz*, 306 Mich App 85, 96; 854 NW2d 531 (2014). Defendant has not shown plain error in the admission of the victim's statements to Dr. Desai.

Second, on June 1, 2016, the victim saw Dr. Bethany Mohr, an expert in child sexual abuse who treats children at the University of Michigan clinic. Again, as with Dr. Desai, because the victim was not a tender-years child, she is subject to a rebuttable presumption that she understood the necessity of being truthful with Dr. Mohr, and defendant's reliance on the *Meeboer* factors is misplaced. See *Garland*, 286 Mich App at 9; *Van Tassel (On Remand)*, 197 Mich App at 662. Defendant makes no attempt to rebut this presumption, and accordingly, defendant has not overcome the presumption that the victim understood the need to tell the truth to Dr. Mohr.

Contrary to defendant's arguments, it is also clear that the victim's statements to Dr. Mohr were reasonably necessary for medical treatment and diagnosis. Dr. Mohr spoke with the victim to obtain a history, during which the victim revealed that defendant had sexually abused her. Specifically, Dr. Mohr testified that, using more childlike terms, the victim reported that (1) defendant put his penis between her labia, although not inside her vagina, (2) defendant put his fingers on her genitals, (3) defendant put his fingers between her buttocks, though not in her anus, (4) defendant put his penis in her mouth, and (5) defendant put his mouth on her vagina. The victim also said that, when defendant put his penis between her labia or in her mouth, "white stuff would come out." On the basis of this information, Dr. Mohr physically examined the victim, and more particularly, Dr. Mohr examined the victim's genitals, buttocks, anus, and perianal area. Dr. Mohr also performed a "labial traction," which allowed her to clearly look at

---

[3] On appeal, defendant compares the present case to *People v Shaw*, 315 Mich App 668, 675; 892 NW2d 15, 22 (2016), wherein this Court concluded that MRE 803(4) did not apply because the complainant did not undergo a gynecological examination for medical treatment. However, *Shaw* is distinguishable from the present case. Notably, in that case the medical examination in question did not occur until *seven years* after the last alleged instance of abuse and, in the intervening years, the complainant had seen a different physician for gynecological care. *Shaw*, 315 Mich App at 675. In contrast, in this case, the victim saw Dr. Desai within a matter of weeks, and he was the first doctor to examine her after her disclosure in April 2016.

the hymen and vaginal opening. Dr. Mohr tested for several sexually transmitted diseases. Clearly, the victim's statements enabled Dr. Mohr to conduct a tailored physical examination and to assess whether treatment for sexually transmitted diseases was required. See *Meeboer*, 439 Mich at 329-330, 334-335; *Duenaz*, 306 Mich App at 96. The victim's statements made for these purposes were reasonably necessary for medical treatment and diagnosis. See *Mahone*, 294 Mich App at 215.

In contrast to this conclusion, defendant suggests that Dr. Mohr's examination was unnecessary in light of Dr. Desai's earlier examination. However, in actuality, the record makes plain that Dr. Desai referred the victim to the clinic at the University of Michigan because he believed that she needed more specialized examination and testing by doctors who were experts in sexual abuse, including additional testing for sexually transmitted diseases and physical examination of the victim's hymen. On the basis of the victim's statements, Dr. Mohr provided this more specialized treatment, including additional testing for sexually transmitted diseases and additional examination such as the labial traction. Because the victim's statements to Dr. Mohr were reasonably necessary for medical treatment, defendant has not shown plain error in the admission of these statements.

Finally, during a visit to the emergency room in February 2013, the victim made a disclosure of sexual abuse to Dr. Margaret Gillis, an emergency room physician. The admissibility of the victim's statements to Dr. Gillis poses the closest question, but on the available record, defendant has not shown plain error in the admission of these statements. Dr. Gillis saw the victim at an emergency room in February 15, 2013, when the victim was six, almost seven years old. Because she was a tender-years child at that time, the *Meeboer* factors apply, and on the whole, these factors support the admission of the victim's statement to Dr. Gillis.

In terms of age and maturity, the victim was almost seven years old and sufficiently mature to provide a basic description of defendant's sexual abuse. See *Meeboer*, 439 Mich at 331. She used childlike terms, appropriate to her age, informing Dr. Gillis that defendant "touched" her "private area." See *Duenaz*, 306 Mich App at 96. The victim's examination by Dr. Gillis was not prompted by law enforcement or the prosecutor in connection with an ongoing investigation or pending trial; rather, the victim went to the emergency room complaining of discomfort while urinating. The examination was medical in nature, not psychological, and Dr. Gillis did not ask any leading questions. See *id*. And, there is no indication that the victim was mistaken as to defendant's identity. With regard to the remaining *Meeboer* factors, defendant claims that (1) the manner in which the statements were elicited (insofar as her mother told the hospital tech that the victim had something to say), (2) the delay in the victim's report given that she had not lived with defendant for months before her emergency room visit, and (3) her possible motive to lie to please her mother, weigh against admission of the victim's statement to Dr. Gillis. However, the assertion that her mother coerced the victim into making a false allegation in 2013 is largely speculative,[4] and this assertion is wholly undermined by the fact that

---

[4] Indeed, it is quite plausible that her mother's prompting of the victim was motivated by a desire to ensure that the victim received proper medical care. See generally *People v Yost*, 278 Mich

-6-

the victim first identified defendant as her assailant in 2011—when her mother lived with defendant and had no apparent reason to coach the victim to fabricate allegations against him. Moreover, as discussed, the victim's language choices and the other circumstances surrounding the emergency room visit do not indicate that her statements were influenced by an adult. See *People v McElhaney*, 215 Mich App 269, 281; 545 NW2d 18 (1996). Considering the totality of the circumstances, it does not clearly or obviously appear that the victim's statement to Dr. Gillis was untrustworthy for purposes of MRE 803(4). Defendant cannot show plain error on this basis.

In terms of whether the victim's statement to Dr. Gillis was reasonably necessary for medical treatment and diagnosis, defendant emphasizes that the victim first made a disclosure, at her mother's prompting, to a tech, after Dr. Gillis's initial examination. However, the statement that the prosecutor introduced was the statement made to Dr. Gillis, after Dr. Gillis returned to the examination room and spoke to the victim. The victim was at the hospital complaining of discomfort while urinating, and a history of sexual abuse could be relevant to diagnosis and treatment of the cause of discomfort while urinating. Indeed, Dr. Gillis testified at trial that redness and pain while urinating can occur in cases of sexual abuse, and Dr. Gillis treated this possible sexual abuse by providing information about the University of Michigan clinic and contacting the authorities. See *Meeboer*, 439 Mich at 334. Overall, given the nature of the victim's physical complaint, her statements regarding sexual abuse were reasonably necessary for medical treatment and diagnosis. Defendant has not shown plain error in the admission of the victim's statement to Dr. Gillis under MRE 803(4).[5]

Given that the victim's statements to Dr. Gillis, Dr. Desai, and Dr. Mohr were admissible under MRE 803(4), defendant cannot establish that defense counsel provided ineffective assistance by failing to object to this evidence. Any objection to the admission of the victim's statements would have been futile, and defense counsel is not considered ineffective for failing

---

App 341, 362 n 2; 749 NW2d 753 (2008) (recognizing that persons, such as parents, may be involved in conversations with medical personnel for the purposes of medical diagnosis and treatment of a child).

[5] Even if there were error in the admission of the victim's out-of-court statements to healthcare providers, defendant would not be entitled to relief because he has not shown that the error was outcome-determinative. The victim testified at trial and identified defendant as the individual who sexually abused her. Apart from the victim's in-court testimony and her statements to healthcare professionals, there was ample evidence that the victim had made previous allegations against defendant, and evidence of the victim's disclosure to her grandmother in 2016 was also introduced at trial. In this context, the victim's out-of-court statements to medical personnel were largely cumulative and merely corroborated her in-court testimony. See *Gursky*, 486 Mich at 620-621; *Duenaz*, 306 Mich App at 97. Further, the possibility of prejudice was greatly diminished because the victim testified and was subject to cross-examination. See *Gursky*, 486 Mich at 620-621; *Duenaz*, 306 Mich App at 97. On this record, defendant cannot show outcome-determinative error, and he is not entitled to relief on appeal. See *Coy*, 258 Mich App at 12.

to make a futile objection. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Moreover, even assuming defense counsel could have succeeded on an objection to the victim's statements under MRE 803(4), a *Ginther* hearing has not been held, and on the available record, defendant has not overcome the presumption that counsel's decision not to object was a matter of trial strategy. See *Solloway*, 316 Mich App at 188. Defense counsel used the victim's repeated disclosures—and the circumstances surrounding her disclosures—to argue that the victim's mother coached the victim to make allegations against defendant, and that, like the allegations in 2011 and 2013, which did not result in charges against defendant, the current allegations were without merit. Additionally, in light of the victim's in-court testimony and the other evidence of the victim's previous allegations, defendant also has not shown a reasonable probability that, but for counsel's failure to object to the victim's statements under MRE 803(4), there is a reasonable probability of a different outcome. See *id*. Accordingly, defendant has not established that he was denied the effective assistance of counsel.

### III. MISSING WITNESS

Defendant argues that the prosecutor's failure to produce an endorsed witness—Nicole Westbrook—denied him a fair trial. Although the trial court granted defendant's request for a missing-witness instruction, defendant contends that the instruction was inadequate to remedy the prosecution's failure to make Westbrook available because the instruction failed to inform the jury that Westbrook was a CPS worker. Alternatively, defendant argues that defense counsel provided ineffective assistance by failing to seek a continuance or another remedy to place Westbrook's testimony before the jury. We disagree.

Under MCL 767.40a(3), not less than 30 days before trial, the prosecution must provide defendant with "a list of the witnesses the prosecuting attorney intends to produce at trial." "A prosecutor who endorses a witness under MCL 767.40a(3) is obliged to exercise due diligence to produce that witness at trial." *People v Eccles*, 260 Mich App 379, 388; 677 NW2d 76 (2004). If the prosecutor fails to produce an endorsed witness, and the witness has not been properly excused under MCL 767.40a(4), the trial court has discretion in fashioning a remedy for this violation, which may include a missing-witness instruction under M Crim JI 5.12. *People v Everett*, 318 Mich App 511, 519; 899 NW2d 94 (2017). See also *People v Perez*, 469 Mich 415, 420; 670 NW2d 655 (2003).

In this case, the prosecution's list of endorsed witnesses included Westbrook; however, the prosecutor failed to make Westbrook available at trial, and the trial court concluded that the prosecution failed to show good cause for Westbrook's removal from the prosecution's witness list. Defense counsel requested a missing instruction, and the trial court granted this request. The trial court instructed the jury under M Crim JI 5.12, stating that "Westbrook is a missing witness whose appearance was the responsibility of the prosecution" and that the jury could "infer that this witness's testimony would have been unfavorable to the prosecution's case."

On this record, defendant has not shown that the trial court abused its discretion in crafting a remedy for the prosecution's failure to produce Westbrook. A missing witness instruction is recognized as a potential remedy for a prosecutor's failure to produce an endorsed witness. See *Perez*, 469 Mich at 420. In contrast, defendant's appellate argument suggests that a more appropriate remedy would have been a continuance to actually procure Westbrook's

appearance at trial. However, as defendant concedes on appeal, he did *not* request a continuance at trial. "The longstanding rule of this state is that, in the absence of a request for a continuance, a trial court should assume that a party does not desire a continuance." *People v Elston*, 462 Mich 751, 764; 614 NW2d 595 (2000). In other words, the trial court had no obligation to sua sponte delay the proceedings to obtain Westbrook's testimony. See *id*. Instead, faced with the prosecutor's failure to produce Westbrook and defendant's request for a missing-witness instruction to remedy this error, the trial court acted well within its discretion by giving a missing-witness instruction regarding Westbrook.

Moreover, "to warrant reversal for a violation of MCL 767.40a, defendant must show that he was prejudiced by noncompliance with the statute." *Everett*, 318 Mich App at 523 (quotation marks and citation omitted). And, although defendant claims that he was prejudiced by the prosecution's failure to produce Westbrook, there is no record support for this assertion.[6] Nothing in the lower court record indicates what testimony Westbrook would have offered. Indeed, while defendant now claims that Westbrook's testimony would have aided his defense, he did not name her as a defense witness, and when informed that the prosecutor would not be calling her at trial, defendant did not request a continuance in order to procure Westbrook's testimony or to otherwise prepare for her absence. See *id*. These facts do not support defendant's claim that he was prejudiced by the prosecution's failure to produce Westbrook. See *id*. To the contrary, when the prosecution failed to produce Westbrook, defendant received the benefit of an instruction allowing the jury to infer that Westbrook's testimony would have been harmful to the prosecution's case. On this record, defendant is not entitled to reversal based on the prosecutor's failure to comply with MCL 767.40a.

In contrast to this conclusion, defendant challenges the efficacy of the missing-witness instruction on the facts of this case. Specifically, defendant contends that the instruction was meaningless because the jury did not know Westbrook's occupation or her role in the case, and thus, the jury could not possibly draw an inference that her testimony would harm the prosecutor's case. However, defendant requested the missing-witness instruction under M Crim JI 5.12, and aside from the assertion that a missing-witness instruction also should have been given with regard to another witness, defendant approved the instruction as given. In these circumstances, defendant has waived review of the missing-witness instruction.[7] See *People v*

---

[6] On appeal, defendant attached a CPS investigation report to his appellate brief, and he claims that this report shows that Westbrook's testimony would have aided his defense. However, this document does not aid defendant's position. Defendant contends that this document shows that Westbrook could have explained why charges were not pursued in 2011 and 2013. However, from the report, it is not clear that Westbrook had any personal involvement with the 2011 and 2013 investigations. In any event, there was ample evidence introduced at trial to show that charges were not pursued against defendant in 2011 and 2013, and in large part, Westbrook's testimony would have been, at best, cumulative. Ultimately, the CPS report does not entitle defendant to relief on appeal.

[7] We note also that, contrary to defendant's claim that no mention was made of Westbrook's occupation at trial, defense counsel mentioned during closing arguments that Westbrook was a "CPS worker" whom the jurors had not "heard from."

*Jones*, 468 Mich 345, 352 n 6; 662 NW2d 376 (2003); see also *People v Kowalski*, 489 Mich 488, 504; 803 NW2d 200 (2011).

In connection with the missing-witness instruction, defendant also argues that defense counsel provided ineffective assistance by failing to request a continuance, failing to procure Westbrook's testimony, failing to request a due-diligence hearing, and failing to request that the prosecutor agree to a stipulation regarding Westbrook's testimony. However, the basic factual predicate underlying defendant's claim that defense counsel ineffectively handled Westbrook's absence from trial is that Westbrook's testimony would have benefited the defense. It is defendant's burden to establish the factual predicate of his claim, see *Carbin*, 463 Mich at 600; but there is no evidence to support his contention that Westbrook's testimony would have been favorable to the defense. Absent evidence that Westbrook's testimony would have benefited the defense, defendant has not overcome the presumption that defense counsel's decision to request a missing-witness instruction, in lieu of seeking a continuance or other relief, was a matter of trial strategy. See *Solloway*, 316 Mich App at 188. Indeed, given that Westbrook was endorsed as a *prosecution* witness, it is more likely that her testimony would have been unfavorable to defendant, and thus, defense counsel exercised eminently sound trial strategy by seeking a missing-witness instruction rather than engaging in measures to place Westbrook's actual testimony before the jury. Further, absent some indication of how Westbrook would have testified, defendant cannot show that the failure to procure her testimony affected the outcome of the proceedings. See *People v Putman*, 309 Mich App 240, 249; 870 NW2d 593 (2015). Accordingly, defendant has not established that he was denied the effective assistance of counsel in connection with Westbrook's absence from trial. See *Jackson*, 292 Mich App at 600-601.

## IV. PROSECUTORIAL MISCONDUCT

Finally, defendant argues that the prosecutor engaged in misconduct that deprived him of a fair trial. Specifically, defendant asserts that the prosecutor improperly (1) argued facts not in evidence, (2) appealed to the jurors' sympathy for the victim, and (3) denigrated defense counsel. Alternatively, defendant asserts that defense counsel provided ineffective assistance by failing to object to these alleged instances of misconduct.

Defendant failed to contemporaneously object to the prosecutor's remarks and to request a curative instruction; and accordingly, his claims of prosecutorial misconduct are unpreserved and reviewed for plain error. See *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "To avoid forfeiture of review of this issue under the plain error rule, the defendant must demonstrate that: (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected the defendant's substantial rights." *People v McLaughlin*, 258 Mich App 635, 645; 672 NW2d 860 (2003). Reversal is not warranted when "a curative instruction could have alleviated any prejudicial effect." *Ackerman*, 257 Mich App at 449.

"A prosecutor has committed misconduct if the prosecutor abandoned his or her responsibility to seek justice and, in doing so, denied the defendant a fair and impartial trial." *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014). The prosecutor's conduct must be evaluated "on a case-by-case basis, reviewing the prosecutor's comments in context and in light of the defendant's arguments." *Id*. at 62-63. "Prosecutors are typically afforded great latitude

regarding their arguments and conduct at trial." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008).

## A. FACTS NOT IN EVIDENCE

First, defendant maintains that the prosecutor argued facts not in evidence by suggesting, during opening statements and closing arguments, that the victim's allegations in 2011 did not result in criminal charges because the victim did not disclose details of the abuse to authorities at that time, and the reason the victim failed to provide details was that the victim's young age prevented her from fully articulating what defendant had done to her and she was simply living in "survival mode." "A prosecutor may not make a factual statement to the jury that is not supported by the evidence, but he or she is free to argue the evidence and all reasonable inferences arising from it as they relate to his or her theory of the case." *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007) (citations omitted). In this case, contrary to defendant's assertions that there was no factual basis for the prosecutor's arguments, there was ample evidence that the victim repeatedly reported defendant's sexual abuse, beginning in 2011, and that, while CPS and police investigated the allegations, her earlier disclosures did not result in criminal charges and the victim was returned to a home where defendant was able to continue his sexual abuse of her. Further, although defendant contends that there was no evidence that the victim failed to disclose particular details to authorities during any earlier investigation, the victim's father testified—without objection—that during past CPS investigations, the victim "declined to comment" on the abuse and said "I have a secret and I can't tell anything."

As to the reasons why the victim failed to provide investigators with details in the past, the evidence also showed that when the victim first disclosed in the summer of 2011, she was only five years old. It was not unreasonable for the prosecutor to argue on the basis of the victim's young age that her ability to articulate and communicate developed between her initial disclosure at the age of five and her later disclosure at the age of 10. Additionally, the prosecutor did not focus solely on the victim's ability to describe the abuse, but reasonably argued based on the evidence that the victim's later disclosure to authorities in 2016 was more detailed because it was made at a time when custody had changed and she was living primarily in the safety of her father's home. While defendant now objects to the prosecutor's characterization of the victim as being in "survival mode" when living with defendant, there was support for this argument insofar as the victim testified that defendant threatened to "hurt" her if she revealed the abuse. On the whole, defendant has not shown that the prosecutor argued facts not in evidence during closing, see *Dobek*, 274 Mich App at 66, or committed any misconduct during opening statements, see *Ericksen*, 288 Mich App at 200 ("Opening statement is the appropriate time to state the facts that will be proved at trial.").

Second, defendant contends that the prosecutor argued facts not in evidence by asserting that a 10-year-old girl could not describe sexual acts or draw a picture of a penis without firsthand experience. Defendant contends that such argument is improper because there was no testimony regarding developmental milestones to support the prosecutor's arguments. However, it is well settled that jurors "may and should use their own common sense and everyday experience in evaluating evidence." *People v Simon*, 189 Mich App 565, 567; 473 NW2d 785 (1991). The argument that young children lack detailed knowledge about sexual acts, ejaculation, and the consistency and appearance of semen is a permissible appeal to the jury to

exercise their common sense and everyday experience when evaluating the evidence.[8] Defendant has not shown prosecutorial misconduct.

Third, defendant asserts that the prosecutor argued facts not in evidence by discussing delayed disclosure of child sexual abuse and theorizing about general reasons why children delay reporting abuse. As a general matter, contrary to defendant's claim that there was *no* evidence that children often delay in reporting abuse, Dr. Mohr—an expert in pediatrics, child abuse, and child sexual assault—testified that "many times children disclose abuse remotely from when the sexual abuse actually occurred." However, no witness testified to explain the reasons why children of abuse delay in reporting or whether the victim's reason for delaying in this case was typical or consistent with other victims of child sexual abuse. See generally *People v Peterson*, 450 Mich 349, 379-380; 537 NW2d 857 (1995), amended 450 Mich 1212 (1995). Accordingly, to the extent the prosecutor commented on delayed disclosure generally and purported to offer broad psychological reasons why children of abuse delay disclosing, the prosecutor argued facts not in evidence because the prosecutor did not offer testimony on this topic. See *People v Meissner*, 294 Mich App 438, 457; 812 NW2d 37 (2011). However, reversal is not required because the trial court clearly instructed the jury that the lawyers' statements and arguments were not evidence. See *id*.

Fourth, defendant argues that the prosecutor offered unsupported opinions regarding the reasons that charges may not have been filed in 2011 and 2013. Although the prosecutor introduced evidence that whether to criminally charge someone is decided by the prosecutor's office, the prosecutor offered no evidence regarding how or why charging decisions are made, and the prosecutor's identification of various possible reasons why someone might not be charged constitutes the presentation of facts not in evidence. Nevertheless, the prosecutor's remarks were relatively brief, and reversal is not required given the trial court's instruction that the lawyers' statements and arguments were not evidence. See *id*.

Indeed, with regard to all of defendant's assertions of improper argument of facts not in evidence, even if there were any errors in the prosecutor's comments and arguments, an instruction could have cured any error, and thus, defendant would not be entitled to relief. See *Ackerman*, 257 Mich App at 449. In fact, the trial court instructed the jury to decide the case on the basis of the evidence, and the trial court informed the jury that the lawyers' statements and arguments were not evidence and that the jury should "only accept things the lawyers say that are supported by the evidence or by [the jurors'] own common sense and general knowledge." "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *Ericksen*, 288 Mich App at 199-200. Defendant is not entitled to relief.

---

[8] Jurors have all been children themselves, and they are thus able to arrive at basic, common-sense conclusions about children. See generally *JDB v North Carolina*, 564 US 261, 272; 131 S Ct 2394; 180 L Ed 2d 310 (2011) (recognizing unique characteristics of children "are self-evident to anyone who was a child once himself").

## B. APPEAL TO JURORS' SYMPATHIES

Next, defendant argues that the prosecutor impermissibly appealed to juror sympathy by stating during closing arguments that:

[E]very victim loses something, whether it's money, whether it's property, whether it's time healing from wounds, or whether it's a loved one. But these [child sexual assault and child abuse] cases are different. In these cases, victims lose a sense of security. Victims lose a sense of trust, and they lose a sense of self. These are not the kinds of cases that happen where they can be witnessed by someone else. These are not the kinds of cases that are disclosed right away, and oftentimes they're not. These are the kinds of cases that happen when no one is around to protect the victim. They happen behind closed or locked doors and they're done by the assailant in a way that discourages disclosure. You finding the defendant guilty is not going to restore [the victim] to her former self, it's just not. That's never going to happen. There are no winners in this case, as in any child sexual assault or child abuse case. And given that this has been done to [the victim] for half of her lifetime, it's not going to go away with a guilty verdict for her, and she might travel through life and be seemingly okay, and then she hits a wall and it hits her like a ton of bricks, that's what happens in these cases. That's what victims lose in these cases. Your guilty verdicts on each count will put [the victim] on a path towards that feeling. [The victim] deserves the same opportunity to be believed that you would give any adult victim. She deserves a verdict that speaks the truth, and that is guilty on all counts.

"Appeals to the jury to sympathize with the victim constitute improper argument." *People v Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001). "The prosecutor commits misconduct when he or she invites jurors to suspend their powers of judgment and decide the case on the basis of sympathy or civic duty." *Lane*, 308 Mich App at 66. However, considering the prosecutor's remarks in the context of the entire trial, even if some of the prosecutor's comments would have been better left unsaid, defendant has not shown plain error and he is not entitled to relief. The remarks were isolated and not so inflammatory as to prejudice defendant. See *Watson*, 245 Mich App at 591. Notably, the prosecutor did not urge the jury to ignore the evidence or suspend their powers of judgment to convict on the basis of sympathy. See *Lane*, 308 Mich App at 66. Rather, the prosecutor urged the jury to give the victim the same consideration that they would an adult victim and to reach a verdict that "speaks the truth." Cf. *id*. (finding prosecutor's request "for justice" for the victim was not prosecutorial misconduct). Moreover, the trial court instructed the jurors not to let sympathy or prejudice influence their decision. See *Watson*, 245 Mich App at 592. Jurors are presumed to follow their instructions. *Ericksen*, 288 Mich App at 199-200. Overall, defendant has not shown plain error, and he is not entitled to reversal of his convictions.

## C. DENIGRATION OF DEFENSE COUNSEL

Defendant also argues that the prosecutor engaged in misconduct by denigrating defense counsel. Defendant points to two specific comments. First, the prosecutor said that she tried to identify the defense theories during trial, and she characterized the defense theories as "things

-13-

that they're throwing against the wall to see what sticks or what resonates with you as jurors . . . ." Second, the prosecutor also challenged defense counsel's theory relating to the 2013 emergency room visit, arguing that "[d]efense counsel missed the boat and missed the point entirely as to that [urinary tract infection (UTI)] issue. The UTI is not an issue, it's never been made an issue by the prosecution."

A prosecutor also may not personally attack defense counsel, *McLaughlin*, 258 Mich App at 646, or suggest that defense counsel is intentionally trying to mislead the jury, *Unger*, 278 Mich App at 236. However, a prosecutor may argue, based on the evidence, that a defense theory should be rejected. *People v Howard*, 226 Mich App 528, 544; 575 NW2d 16 (1997). Considering the prosecution's remarks in the context of the trial as a whole, defendant has not shown plain error. The remarks were fleeting and not so remarkable as to constitute an obvious error denying defendant a fair trial. See *McLaughlin*, 258 Mich App at 647. While the prosecutor clearly asserted that defense counsel's various theories should be rejected, see *Howard*, 226 Mich App at 544, the prosecutor did not personally attack defense counsel's character or attempt to shift the jury's focus from the evidence to defense counsel's personality, see *Unger*, 278 Mich App at 236. Moreover, even if the prosecutor's remarks were somewhat intemperate, any prejudice could have been cured with a jury instruction, and the jury was in fact instructed that the lawyers' comments and arguments were not evidence, that the prosecutor bore the burden of proof and defendant did not have to prove anything, and that the jurors should not let sympathy or prejudice influence their decision. Jurors are presumed to follow their instructions, *Ericksen*, 288 Mich App at 199-200, and defendant has not shown plain error affecting his substantial rights.

## D. INEFFECTIVE ASSISTANCE

Alternatively, defendant asserts that defense counsel provided ineffective assistance by failing to object to the prosecutor's alleged misconduct. To the extent the prosecutor's remarks were not improper, defense counsel cannot be considered ineffective for failing to offer a futile objection. See *id*. at 201. Even if any of the prosecutor's remarks were objectionable, the decision whether to object to the prosecutor's conduct is considered a matter of trial strategy. See *Unger*, 278 Mich App at 242. Defense counsel could have reasonably believed that it was better not to object and to avoid drawing attention to an improper comment. See *id*. This is particularly true given the isolated and fleeting nature of many of the prosecutor's comments as well as the fact that the jury instructions would inform the jury that the lawyers' comments and arguments were not evidence. On this record, defendant has not overcome the presumption that counsel's failure to object was a matter of sound trial strategy, and defendant has not shown that he was denied the effective assistance of counsel. See *id*. at 242-243; see also *Jackson*, 292 Mich App at 600-601.

Affirmed.

/s/ Michael J. Kelly
/s/ David H. Sawyer
/s/ Jane E. Markey

-14-