*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KEVIN THOMAS McCOLLUM,

        Defendant-Appellant.

UNPUBLISHED
May 23, 2019

No. 337735
Oakland Circuit Court
LC No. 2016-259142-FC

Before: SHAPIRO, P.J., and BECKERING and M.J. KELLY, JJ.

PER CURIAM.

Defendant, Kevin Thomas McCollum, appeals as of right from his jury trial convictions for three counts of criminal sexual conduct (CSC), first degree, MCL 750.520b(2)(b), and from the trial court's judgment of sentence. His convictions arise out of acts perpetrated on his stepdaughter, KS. For the reasons set forth in this opinion, we affirm defendant's convictions but vacate his sentence and remand for resentencing.

## I. RELEVANT FACTS

KS's mother began living with defendant when KS was three years old, and they were married sometime thereafter. KS testified that she was about four the first time she remembers defendant touching her inappropriately, and that behavior continued until March 2016, when she was twelve years old. In March 2016, KS told her mother that defendant was touching her inappropriately on her special place. The next day, she told her best friend EP that defendant had sexually abused her since she was little; that defendant tried to pull her pants down, and that he touched her vagina. After school that day, EP told her parents, who called KS's middle school counselor, Ken Dudek, and told him that KS's stepfather was touching her inappropriately. That night, KS's mother required KS to go to the basement with her to confront defendant and tell him to stop. When KS did so, defendant told her that he may have rubbed too low when giving her a stomach or back rub, but he did not think he ever touched her inappropriately. Defendant left the house that night.

The next day, KS was pulled out of class to speak with two counselors—Dudek and a more experienced counselor, Denise Landers. KS told them her stepfather had been touching her

-1-

inappropriately, after which Dudek left the room. KS told Landers it had been going on since defendant came into her life and responded affirmatively when Landers asked if the touching involved a penis. Landers called Child Protective Services (CPS) and members of the school administration. That afternoon, KS's principal, Dr. Catherine Neuhoff, called KS into her office and asked about what was going on at home. KS began to describe a day when she was home after school taking a nap on the couch and her stepfather started to touch her. Neuhoff subsequently talked to the school's police liaison officer, who called the Troy police.

CPS contacted KS's mother the following afternoon. At some point, KS was taken to Care House for a medical examination and a forensic interview. During the interview, she mentioned a boy from church who had touched her inappropriately when she was younger. In July 2016, KS was sent to Indiana to live with her biological father and his wife. Detective Kristine Shuler was assigned to the case and interviewed defendant as part of her investigation. In due course, defendant was arrested and criminally charged.

KS turned 13 the day defendant's trial began. She testified that, multiple times when she was watching cartoons in the basement, defendant would come downstairs, take off her clothes, and touch her special place and her chest with his tongue, his finger, and his private part. When he touched her chest, it was the place normally covered by her bra. Sometimes, he took off his clothes. He moved the skin aside to lick her special place. He used his finger like his tongue, sometimes running it up and down where she wipes and sometimes sticking a finger inside her special place. Sometimes he would lick his finger before touching her special place. He would touch his private part to hers and sometimes try to push it in, but it was too big to fit. Sometimes, he would take her hand, put it on his private part, and have her rub up and down. Sometimes he did more than one of these things at a time. A few times, a white liquid came out of his private part.

KS also testified that, on more than one occasion, defendant would come in to use the bathroom when she was in the shower and still be there when she got out, and he would touch her private part with his finger and sometimes his tongue. Sometimes these things also happened in the living room, in her mom's bed, in her room and her top bunkbed, and in the bathroom. Sometimes it started when she was sleeping. All of these things happened when her mom was asleep or out of the house. Her sister would be either outside or in her own room. Sometimes, defendant asked if she had told anyone and said that this was their little secret.

Additionally, KS testified that she felt weird when defendant touched her inappropriately, she was "kind of scared of him" because "he was, like, a lot more stronger than I am and he's bigger than I am." Sometimes she tried to put her clothes back on and sometimes when she did this, he would stop, but sometimes he would not. Sometimes, she tried to get away, but he held her down by her legs or her arms. At times, she piled things behind her bedroom door to try to protect herself, and sometimes she went into the bathroom and locked the door. She started having periods when she was 11 or 12, and he did not touch her when she was having a period.

Defendant testified that he thought he and KS had a very good relationship. They went to movies, football games, and amusement parks, and she was not skittish around him, although she would not let him brush her hair. She would cuddle up in his arm as they watched movies together, and they played video games. Defendant denied having ever touched KS

inappropriately. He said that if she were being defiant, he would spank her on the buttocks once with an open hand. He would rub her belly if she had a stomachache. He may have rubbed too low, by which he meant the underwear line. When she was about four, he stripped her down, put her in the shower, and scrubbed off marks she had made on her legs with markers. He did pick KS up and put her to bed when she fell asleep with her mother on the couch. There were family dynamic issues; KS was upset about moving and about her younger sister getting more attention from defendant than she got. On cross-examination, defendant admitted that he had been alone with KS, including in the bathroom when she was showering behind a clear or opaque shower curtain. He spanked her as recently as one month before she made her allegations. He roughhoused with her, accidentally touching her breasts, and he and KS had seen each other nude.

While there was other testimony at the trial, there were no witnesses to the sexual abuse, nor was there any physical evidence in support of KS's allegations. The jury convicted defendant on all three charged counts of first degree CSC, and the trial court sentenced him to 30 to 60 years on each count, to be served concurrently. Defendant moved for a new trial and a *Ginther*[1] hearing, both of which the trial court denied. He timely filed this appeal and petitioned this Court for a remand for a *Ginther* hearing, which this Court denied.[2]

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that his counsel provided ineffective assistance for multiple reasons, each of which we will address below. Defendant preserved this claim of error by filing a timely motion for a new trial and for a *Ginther* hearing, *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012); because his motions were denied, we review his claims for mistakes that are apparent on the record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

Ineffective assistance of counsel claims present mixed questions of law and fact. *People v Douglas*, 496 Mich 557, 566; 852 NW2d 587 (2014). We review factual questions for clear error and questions of constitutional law de novo. *Id*. "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011).

To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the two-part test set forth in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). *People v Dendel*, 481 Mich 114, 124-125; 748 NW2d 859 (2008), amended 481 Mich 1201 (2008). First, a defendant must establish deficient performance. *Dendel*, 481 Mich at 125. An attorney's performance is deficient when "counsel's representation fell below an objective standard of reasonableness" "under prevailing professional norms." *Strickland*, 466 US at 688. Second, a defendant must establish that he was so prejudiced by the deficient performance that

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] *People v Kevin Thomas McCollum*, unpublished order of the Court of Appeals, entered May 15, 2018 (Docket No. 337735).

he was denied a fair trial. *Dendel*, 481 Mich at 125. Prejudice is established when "there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 US at 694.

## A. TESTIMONY OF KS'S FATHER

Defendant first argues that counsel was ineffective by failing to object to the testimony of KS's biological father. Defendant claims the father improperly vouched for KS's credibility by testifying that certain of KS's behaviors were consistent with sexual abuse. We disagree.

KS's father testified that he was a supervising psychologist at a mental health center. He first learned that KS had accused defendant of sexual abuse through a telephone call from KS's mother shortly after Landers reported the alleged abuse to CPS. KS's father testified that he had been concerned about KS's behavior before March 2016. Specifically, he testified that KS's mood was up and down, she did not want to talk about a cruise she had taken with her mother and defendant shortly after their marriage, and when he gave her a bath at four or five years old, she pushed his hands away as he tried to wash between her legs and told him not to touch her special place. Within the past two years, he had noticed that she would not take her purse off even to go to bed, and she often slept in her clothes. She always insisted on sleeping with the light on, resisted showering, and had to be reminded to brush her teeth. Sometimes she binged on food, and other times she had no appetite at all. When meeting new people, she was at times open and talkative and at other times extremely shy. She would often stare into space and it was difficult to get her attention, and she rambled and lost focus when talking. When he brought this up with KS's mother, she said she thought KS had attention deficit hyperactivity disorder (ADHD). He thought KS did have ADHD, although such behaviors could be from multiple different causes, including trauma.

Defendant argues that KS's father improperly bolstered KS's credibility by testifying that her concerning behaviors were consistent with sexual abuse. However, defendant has mischaracterized the witness's testimony. As noted above, KS's father testified that KS's behavior was consistent with her having ADHD, as her mother believed, and that it was also consistent with multiple other causes, "including trauma." Notably, KS's father did not limit "trauma" to that which results from sexual abuse. Additionally, he testified on cross-examination that the behavior could also have been caused by general anxiety disorder, PTSD, or depression, and he agreed with defense counsel's statement that a child who had never been sexually abused could exhibit the same concerning behaviors that KS had exhibited. In short, it was not objectively unreasonable for defense counsel to refrain from objecting to this testimony as bolstering KS's credibility because it simply did not do so.

Equally unsuccessful is defendant's contention that KS's father offered improper expert testimony. MRE 701 provides for the admission of lay testimony "in the form of opinions or inferences" as long as those opinions or inferences are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." KS's father provided factual testimony of events as he perceived them; he did not opine or imply that KS had been sexually abused or that her behavior was caused by sexual abuse. The only opinions he provided were those he held *before* KS alleged that defendant committed sexual abuse, when he thought she had ADHD, and he

-4-

assumed that she pushed him away during her bath because she was being taught at home not to let anyone touch her genital area. For these reasons, the testimony of KS's father was proper and admissible, and defense counsel's failure to object to the testimony of KS's father did not constitute ineffective assistance. *People v McGhee*, 268 Mich App 600, 627; 709 NW2d 595 (2005) (indicating that defense attorneys are not required to make futile objections).

## B. HEARSAY

Defendant next argues that counsel's performance fell below reasonable professional norms when his attorney stipulated to the admission into evidence of the Care House video of KS's interview and failed to object to hearsay testimony from multiple witnesses. Defendant contends that his attorney's deficient performance prejudiced him because it allowed the jury to hear testimony and evidence that impermissibly bolstered KS's credibility in a case that turned largely on credibility.

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801. Unless an exception exists, hearsay is inadmissible. MRE 802. The video of the Care House interview was hearsay for which no exception exists. The prosecution tacitly concedes this on appeal by failing to argue either that it was not hearsay or that one of the hearsay exceptions applied to make it admissible, but argues that defense counsel had a strategic purpose in admitting the video. The record supports the prosecution's argument.

The record clearly shows that the Care House video was crucial to defense counsel's theory of the case, which was that the investigation of KS's allegations was incomplete, KS was untruthful, and her account of defendant's alleged abuse constantly evolved. The video of the Care House interview played a significant role in these arguments, as is evident from counsel's frequent reference to and quotation from the interview during his opening statement.

Regarding the quality of the investigation, counsel referred to KS's comments about a webcam that defendant would turn off before touching her inappropriately and a boy from her church who had touched her inappropriately; he asserted that these comments provided relevant leads that the authorities did not properly investigate. With respect to KS's truthfulness, counsel stressed KS's detailed comments about the purpose and function of a home webcam, details that her mother's testimony would directly contradict. Implying that the forensic interviewer' technique had affected KS's account of the abuse, counsel urged the jury to pay careful attention to the video and look for "suggestive questions," "leading questions," "social reinforcements" of KS's responses, and "disapproval for some statements." As an example of the latter, counsel informed the jury that KS said in her interview that defendant always took her sister to the store, but not her, and that she recently found out that defendant had wanted to adopt her and make her his "real daughter" when she was two. Counsel pointed out that the interviewer did not pursue these observations, but returned immediately to questions about touching, thus strongly implying that if the interviewer had pursued these observations, she might have discovered that KS was angry, resentful, and seeking attention. Further, by turning away from them, the interviewer signaled to KS that she was not receptive to expressions of anger and resentfulness.

In addition to using the Care House interview extensively in his opening statement, defense counsel cross-examined KS with regard to the webcam, the boy at church, and various other things she had told the forensic interviewer. Defense counsel also called an expert witness who expressed a number of concerns about the forensic interviewer's technique and offered his professional opinion regarding the reliability of the interview in light of those concerns. The centrality of the video of the Care House interview to the defense prompted the prosecution to call a rebuttal witness, who testified that nothing the forensic interviewer did rendered the interview unreliable. Finally, in his closing argument, defense counsel returned to some of the same themes regarding the quality of the investigation and KS's truthfulness that he had raised in his opening statement and pursued during his examination and cross-examination of witnesses. He also urged the jury to review the video carefully if it had any questions about what KS had said.

As the foregoing illustrates, the record supports the conclusion that defense counsel had a sound strategic reason for stipulating to admission of the video. We will not substitute our judgment for that of counsel regarding matters of trial strategy, nor assess counsel's competence with the benefit of hindsight. *Payne*, 285 Mich App at 190. That a strategy did not work out does not necessarily amount to ineffective assistance of counsel. *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008). Accordingly, we conclude that defendant has not met his burden to prove that his counsel's performance was deficient with regard to admission of the video of the Care House interview. See *Douglas*, 496 Mich at 585.

Next, defendant asserts that he received constitutionally ineffective assistance of counsel when his attorney failed to object to hearsay testimony from several witnesses. The challenged witnesses are KS's mother, EP, Dudek, Landers, and Neuhoff. KS's mother testified that KS told her that defendant was touching her "special place" and described the conversation when KS confronted defendant.[3] EP testified that KS told her that defendant had been sexually abusing KS since she was little, including pulling down her pants and touching her vagina. Dudek testified that KS told him and Landers that her stepfather had been touching her inappropriately. Landers testified that KS told her the abuse had been going on since defendant came into her life, and that KS responded affirmatively when asked if the touching involved a penis. Neuhoff testified that KS began to describe a day when she was home after school when she was taking a nap on the couch and her stepfather started to touch her.

The prosecution contends that none of the challenged testimony was hearsay because it was not offered as substantive evidence, but rather, for the proper purpose of showing why each witness acted as he or she did.[4] We find this explanation somewhat disingenuous. KS was the first witness to testify, and she testified in detail to her conversation with her mother and

---

[3] Her testimony regarding what defendant said during his conversation with KS was admissible, as it was not hearsay. MRE 801(d)(2).

[4] The only time such testimony is admissible for substantive purposes is when the declarant is under the age of 10 and the circumstances meet the requirements of MRE 803A, which is inapplicable in the instance case.

subsequent confrontation with defendant in the basement of their house. She also provided detailed testimony about her conversation and interactions with Dudek and Landers.[5] To the extent that the conduct or motivations of any of the challenged witnesses were relevant to whether defendant committed the charged crimes, KS's testimony provided ample context for the witnesses' actions.

However, our review of the record does convince us that defense counsel had a strategic reason for not objecting to some of the hearsay testimony. As already indicated, one component of counsel's defense strategy was that KS's account of the alleged abuse evolved over time in response to the questions she was asked. Counsel used the testimony of EP and of Landers, and to a lesser extent, of Dudek, to illustrate this evolution. In his opening statement, counsel pointed out that KS's account to EP of the alleged sexual abuse was very general and did not involve mention of genitalia. She likewise reported in general terms to Dudek and Landers that defendant had sexually abused her. According to defense counsel, it was not until Landers asked her whether the sexual abuse involved a penis that KS added this detail to her account. Counsel returned to the theme of leading questions in his closing argument, again referring to Landers's question and its presumed effect on KS's account as a critical point in the evolution of KS's account. Thus, with regard to the testimony of these three witnesses, the record suggests that counsel's failure to object to the admission of hearsay evidence was strategic.

However, the record evinces no sound strategic reason why defense counsel would not object to the hearsay of KS's mother or of Neuhoff. Accordingly, we agree with defendant that defense counsel's performance fell below an objective standard of reasonableness when he failed to object to these witnesses' accounts of what KS told them. Defendant has met the first prong of the *Strickland* test with respect to the challenged hearsay testimony of KS's mother and Neuhoff. Having concluded that defense counsel's performance fell below reasonable professional norms with regard to the challenged hearsay statements of these two witnesses, we next consider whether, but for these errors, there is a reasonable probability that the outcome of the trial would have been different. *Strickland*, 466 US at 694.

When determining whether inadmissible hearsay prejudiced a defendant, this Court considers "the nature of the error in light of the weight and strength of the untainted evidence" in order to determine "whether the inadmissible hearsay more probably than not undermined the reliability of the verdict against the defendant." *Douglas*, 496 Mich at 579. Another proper consideration is whether the inadmissible hearsay was "offered and argued as substantive proof of guilt" or whether it merely corroborated the victim's testimony. *Id*. at 580-581. Other factors to be weighed include how important a witness's testimony was to the prosecution's case and the overall strength of that case. *People v Gursky*, 486 Mich 596, 620; 786 NW2d 579 (2010).

---

[5] KS testified that, toward the end of her conversation with Landers, Landers told her that KS would be going to talk to the principal at her other school, Neuhoff, and that Landers would contact CPS. KS did not remember the principal's name and did not testify to her conversation with Neuhoff. Nevertheless, to the extent that Neuhoff testified to what KS told her, it was inadmissible hearsay.

When a trial is essentially a credibility contest between a defendant and a victim, hearsay may be more harmful because it may "tip the scales" against the defendant. *Id.* at 620-621. This is especially likely when the tainted evidence bolsters the credibility of a victim who is a young child, rather than an older child or an adult. *Douglas*, 496 Mich at 579-580. However, if the declarant testified at trial, "any likelihood of prejudice was greatly diminished because the primary rationale for the exclusion of hearsay is the inability to test the reliability of out-of-court statements. Where the declarant testifies and is subject to cross-examination, the hearsay testimony is of less importance and less prejudicial." *Gursky*, 486 Mich at 621 (quotation marks, citation, and alteration omitted).

In the case at bar, the declarant, KS, did testify and was subject to cross-examination. In addition, the inadmissible hearsay testimony was cumulative evidence that corroborated KS's testimony. Neither KS's mother nor Neuhoff added detail or clarity to KS's trial testimony. Further, the trial transcript reveals certain characteristics of KS's testimony from which a jury might reasonably infer credibility, even without the tainted testimony. The trial transcript indicates that KS was not confused, did not contradict herself when she testified, and testified clearly and concisely. Her allegations were consistent throughout the entire process of the investigation and trial. Moreover, although there was no physical evidence of the alleged assaults, KS's mother corroborated allegations from KS regarding certain of defendant's habits during sex. Specifically, KS's mother had heard that KS said defendant licked his fingers before rubbing her genitals, and KS's mother testified that defendant did the same during consensual sex with her. All of this minimized the prejudice of the hearsay and properly bolstered KS's credibility.

By contrast, defendant made certain admissions that might reasonably have served to undermine his credibility with the jury. He said he wrestled with KS and touched her breasts in the process, he rubbed her stomach and rubbed "too low," he went into the bathroom when she was in the shower behind only a clear shower curtain, he spanked her buttocks, he saw her naked and allowed her to see him naked.

Given the strength of the untainted evidence, particularly the relative force of the testimony of KS and of defendant, the fact that KS testified and was subject to cross-examination, and the fact that the challenged testimony corroborated rather than elaborated upon KS's testimony, we conclude that there is no "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Strickland*, 466 US at 694. Defendant is not entitled to a new trial on the ground of his attorney's failure to move to exclude the challenged hearsay.

## C. STATEMENTS IN DEFENDANT'S POLICE INTERVIEW

Defendant argues next that defense counsel rendered ineffective assistance by failing to object to portions of the video of defendant's police interrogation where the detective allegedly made improper statements vouching for KS's credibility. We disagree.

When the prosecution offers a police interrogator's out-of-court statements commenting on the defendant's credibility, not for the truth of the matter asserted, but in order to provide context to the defendant's statements, the interrogator's comments are admissible, but only to the

extent that the prosecution establishes that these statements are relevant, i.e. that they do, in fact, provide needed context. *People v Musser*, 494 Mich 337, 339-340, 835 NW2d 319 (2013), citing MRE 401. Relevant comments still must be excluded if their probative value is substantially outweighed by the danger of unfair prejudice. *Musser*, 494 Mich at 340, citing MRE 403. Even when such remarks are relevant and not unfairly prejudicial, the trial court must, if requested to do so, instruct the jury that statements are admissible for the limited purpose of providing context and for no other purpose. *Musser*, 494 Mich at 340, citing MRE 105.

In none of the statements that defendant challenges does Detective Shuler appear to us to have "vouch[ed] for the veracity of the complainant and indicate[d] that the detective believe[d] the defendant to be guilty." *People v Tomasik*, 498 Mich 953; 872 NW2d 488 (2015). At the start of the interview, Detective Schuler explained to defendant and his attorney, who accompanied defendant at the interview, that the investigation was in its initial stage and she was trying to determine what really happened. Detective Shuler repeated some of KS's allegations, said that KS had disclosed that the sexual abuse had gone on for years, said that KS included "pretty significant" and "very articulate" details, and said that KS's forensic interview was "very specific." It is difficult to conceive of anything more necessary to establishing context to a defendant's responses than a detective's paraphrasing of the allegations against him. Unlike in *Musser*, where an interrogator made numerous out-of-court statements regarding the complainant's credibility, in none of the challenged statements did Detective Shuler opine about the general credibility of children KS's age, the specific credibility of KS's allegations, or that she believed defendant did what KS alleged. See *Musser*, 494 Mich at 361 n 19. Also unlike in *Musser*, where the interrogator's specialized training and experience with child complainants was presented to the jury immediately before it viewed the interrogation video, *id.* at 363, Detective Shuler did not testify that she had any specialized training, or make any additional statements directly to the jury about the credibility of child complainants of KS's age. Detective Shuler's comments were probative in that they established context for defendant's responses, and they were not unfairly prejudicial. Therefore, their admission was not error, and any objection by defense counsel to the detective's statements would have been futile. Defense counsel does not render ineffective assistance by failing to make futile objections. *McGhee*, 268 Mich App at 627.

## D. OTHER-ACTS EVIDENCE

KS's mother testified that KS's description of certain of defendant's sexual practices was familiar because he also did them with her. Defendant argues that this was improper other-acts evidence and that his attorney's failure to object to the testimony constituted ineffective assistance of counsel. Again, we disagree.

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." MRE 404(b)(1). This rule exists because of "fear that a jury will convict the defendant inferentially on the basis of his bad character rather than because he is guilty beyond a reasonable doubt of the crime charged." *People v Crawford*, 458 Mich 376, 384; 582 NW2d 785 (1998). However, "MRE 404(b) 'permits the admission of evidence on any ground that does not risk impermissible inferences of character to conduct.' " *People v Watson*, 245 Mich App 572, 576; 629 NW2d 411 (2001), quoting *People v Starr*, 457 Mich 490, 496; 577 NW2d 673 (1998). Other-acts evidence is

admissible if offered for a proper purpose, it is relevant, and its probative value is not substantially outweighed by the danger of unfair prejudice. *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). Examples of proper purposes include " 'proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident.' " *Watson*, 245 Mich App at 576-577, quoting MRE 404(b)(1). When the trial court admits other-acts evidence that meets these criteria, the trial court must provide a limiting instruction to the jury if requested. *Id*. at 75.

At issue is the testimony of KS's mother that some of defendant's habits during sex, which she learned through her attorney that KS had described, were familiar to her because defendant did them during sex with her. Specifically, that defendant licked his fingers before rubbing his wife's vagina, and pulled out to ejaculate on her stomach rather than ejaculating inside her because they did not use birth control.

In light of the facts before us, we fail to see how the testimony of KS's mother regarding defendant's sexual practices during consensual sex with her is inadmissible other-acts evidence. Testimony that defendant licked his fingers before rubbing his wife's genitals during consensual sex carried no risk of any impermissible inference that defendant was of bad character. In fact, this innocuous and consensual conduct with his wife conveys no information whatsoever about defendant's character. Consequently, there could be no "character to conduct" inference to prohibit admission of the testimony. *Starr*, 457 Mich at 496.

Even if the testimony of KS's mother could be construed as the type of other-acts evidence contemplated by MRE 404(b), her testimony that defendant licked his fingers before rubbing her genitals was admissible nevertheless because it was offered for a proper purpose, was relevant, and its probative value was not substantially outweighed by the danger of unfair prejudice. *VanderVliet*, 444 Mich at 74-75. The testimony pertained to the identity of KS's abuser and the absence of mistake, both of which are proper purposes, and were relevant, given defendant's theory that KS was misattributing to him conduct actually perpetrated by a teenage boy with whom KS was acquainted. In addition, the probative value of the testimony was not substantially outweighed by the danger of unfair prejudice because, for reasons already discussed, the testimony provided no evidence of bad character from which a jury could infer that defendant must be guilty of the charged crime.

However, that defendant pulled out and ejaculated on his wife's stomach as their method of birth control was not relevant, because KS never testified that defendant inserted his penis into her vagina or that he ejaculated on her stomach. Yet even this testimony is not barred by MRE 404(b)(1) because, like the testimony that defendant licked his fingers before rubbing his wife's genitals, it is equally innocuous and equally divorced of any significance regarding defendant's character. Because there was no reason to object to either detail under MRE 404(b)(1), defendant has failed to establish that his counsel's performance was deficient on this ground. *McGhee*, 268 Mich App at 627.

### E. PHOTOS OF KS AND DEFENDANT

Defense counsel initially sought to introduce into evidence five photographs that showed KS smiling with defendant, but the prosecution objected on the ground of relevance. Defense

counsel argued that the photographs were relevant because they demonstrated, contrary to her testimony, that KS was not skittish around defendant. The trial court denied admission of the photographs without prejudice, but defendant made no further attempts to admit them into evidence. Defendant argues that defense counsel was ineffective because he failed to take the necessary steps to have photographs admitted into evidence. We disagree.

Evidence that is not relevant is not admissible, MRE 402, and the photographs defendant sought to admit into evidence were, in fact, irrelevant. Relevant evidence is " 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Watson*, 245 Mich App at 576, quoting MRE 401. The most that the photographs could possibly have established was that KS did not appear skittish around defendant in pictures taken at public events. This was immaterial because KS never testified that she was skittish around defendant outside her own home, or that he had ever assaulted her outside her own home, when other people were around, or at public events. She testified that he assaulted her only when her mother was out and her sister was either outside or in her own bedroom. The testimony of KS's mother and of EP had already established that KS did not appear skittish around defendant even *in* her own home when other people were around. Thus, any further attempt by defense counsel to have these photos admitted would have been futile, because they were inadmissible on the ground of relevance. Consequently, it was not objectively unreasonable for defense counsel to stop trying to have the photographs admitted. Defendant's claim that counsel was ineffective for this decision fails. *McGhee*, 268 Mich App at 627.

## F. IMPEACHMENT WITH CIVIL TRIAL TESTIMONY

Defendant argues next that his counsel was ineffective for failing to impeach KS with testimony from a prior civil trial to determine whether the court should terminate her mother's parental rights. We disagree.

A defendant must overcome the strong presumption that his counsel's actions and inactions were sound trial strategy. *People v Horn*, 279 Mich App 31, 40; 755 NW2d 212 (2008). Decisions regarding what evidence to present are presumed to be matters of trial strategy. *People v Garza*, 246 Mich App 251, 255; 631 NW2d 764 (2001). Decisions on how to question a witness are subject to the same presumption. *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Garza*, 246 Mich App at 255. The fact that a strategy does not work does not make the attorney incompetent. See *People v Pickens*, 446 Mich 298, 330; 521 NW2d 797 (1994).

Defendant first argues that counsel should have elicited from KS the same testimony she gave at the trial to terminate her mother's parental rights; namely, that she attempted to run away from home because she was jealous of her sister. Defendant asserts that such testimony would have helped to develop a motive for KS's allegations against defendant. The single page from the transcript of the termination trial that defendant provided to this Court shows that KS was asked whether her mother ever told her things were going to be okay, that she would take care of KS and protect KS. KS responded that her mother said such words to her after KS attempted to run away several times because she "was jealous of her little sister getting all the attention."

When she returned home, KS stated, "She tried to tell me like it's okay. We're [sic] not going to spend all my [sic] time with your sister."

Defense counsel was certainly aware, as was the jury, that KS was jealous of her little sister; counsel elicited that testimony from defendant multiple times. Counsel also attempted unsuccessfully to elicit testimony from KS's mother that KS had been acting out from jealousy from the time her sister was born, but KS's mother characterized the sibling rivalry as normal. The record contains no corroborating testimony about either the strength of defendant's relationship with KS's little sister or defendant's conclusion that KS ran away because she wanted more attention from him. Given that her testimony occurred in the context of a proceeding to determine whether the court should terminate her mother's parental rights, it seems just as likely that KS ran away because she wanted more attention from her mother. Moreover, KS's testimony after the part he deems pertinent proceeded to demonstrate that KS was not comfortable being around defendant. In light of the record evidence, we do not believe that defendant has met his burden to establish that defense counsel's failure to pursue KS's jealousy of her sister constituted deficient performance. Defense counsel attempted to establish that jealousy motivated KS's allegations, but was unsuccessful. The fact that a strategy does not work does not make the attorney incompetent. See *Pickens*, 446 Mich at 330.

Defendant also argues that counsel was ineffective for failing to impeach KS with testimony at her mother's termination trial that KS was nervous around defendant because he is much larger than is she. Defendant's argument fails because he cannot establish the factual predicate of his claim; namely, that defense counsel *could* have impeached KS with her previous testimony. See *Dendel*, 481 Mich at 125. Asked at her mother's termination trial whether, prior to March 2016, there were times she did not want to be around defendant, KS replied, "I've always been a little nervous around my stepdad 'cause he's tall and he's—he's a lot bigger than I am. And, I get nervous around things that are—". KS was not given an opportunity to explain why defendant's being big frightened her. At defendant's trial, KS testified that she was "kind of scared of him" because "he was, like, a lot more stronger than I am and he's bigger than I am." In both proceedings, KS testified that she was afraid of defendant because he was bigger and stronger than is she. Defendant's failure to articulate how KS's testimony at the termination trial would have been relevant for impeachment purposes at his trial, when it was essentially identical to the testimony KS offered at defendant's trial, is fatal to his argument. See *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). Given the existing record in this case, this Court has no basis for concluding that defense counsel's strategy was unsound in questioning KS, *Garza*, 246 Mich App at 255, or that he performed below an objective standard of reasonableness in his questioning of KS, *Putman*, 309 Mich App at 248.

## III. CREDIBILITY VOUCHING TESTIMONY REGARDING DIVORCE

Defendant raises two claims of error involving the testimony of KS's mother that she filed for divorce from defendant and regarding why she filed for divorce. Defendant contends that her testimony explaining why she filed for divorce from defendant was irrelevant and the trial court abused its discretion when it overruled defendant's objection. Defendant also contends that defense counsel rendered ineffective assistance by failing to object earlier to the prosecution's line of questioning. We agree that the trial court abused its discretion in overruling defense counsel's objection, but we conclude that defendant is not entitled to relief because the

-12-

error was harmless. We disagree that counsel performed below an objective standard of reasonableness by failing to object earlier.

We review decisions whether to admit evidence for an abuse of discretion, and underlying questions of law, such as whether the evidence is admissible under the Michigan Rules of Evidence or a statute, de novo. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). A trial court abuses its discretion when it admits evidence that is inadmissible as a matter of law. *Id*.

As explained above, relevant evidence is, " 'evidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *People v Mills*, 450 Mich 61, 66; 537 NW2d 909 (1995), modified 450 Mich 1212 (1995), quoting MRE 401 (emphasis in *Mills*). "Evidence which is not relevant is not admissible." MRE 402. In analyzing a relevance issue, a reviewing court must first determine whether the evidence is material, then whether it has "probative force." *Mills*, 450 Mich at 67. To be material, a fact must be " 'within the range of litigated matters in controversy.' " *Mills*, 450 Mich at 68, quoting *United States v Dunn*, 805 F 2d 1275, 1281 (CA 6, 1986). The credibility of a witness is a material fact. *Mills*, 450 Mich at 69. Testimony has probative force if it tends to make something more or less probable. *Id*. at 68.

The prosecution asked KS's mother whether a divorce was pending, who filed, when, and why. When the prosecution asked the latter question, defense counsel objected on the ground of relevance. The prosecution argued that it was relevant because the man being divorced is the man accused of sexually assaulting the witness's daughter, and the trial court overruled defense counsel's objection. KS's mother then responded that she filed for divorce because, "[m]y daughter disclosed to me that [defendant] was sexually abusing her." This testimony goes to the credibility of both defendant and KS, which were clearly material. However, one person's opinion that another is guilty of the allegations made against him, standing alone, has no probative value whatsoever, and it is irrelevant for that reason. MRE 402. In addition to lacking probative value, this testimony violated the prohibition of one witness testifying as to the credibility of other witnesses. See *Musser*, 494 Mich at 348-349. Therefore, the trial court abused its discretion when it denied defense counsel's relevance objection and admitted testimony that was inadmissible as a matter of law, both because it was irrelevant and because it was improper credibility testimony. See *Lukity*, 460 Mich at 488.

However, a defendant is not entitled to relief on the ground that evidence was improperly admitted unless the defendant shows that it is more probable than not that the error was outcome determinative.' " *Lyles*, 501 Mich at 117-118, quoting *Lukity*, 460 Mich at 488. In conducting its analysis, " 'the reviewing court should focus on the nature of the error in light of the weight and strength of the untainted evidence.' " *Lyles*, 501 Mich at 118, quoting *People v Elston*, 462 Mich 751, 766; 614 NW2d 595 (2000).

In the present case, the weight and strength of the untainted evidence in this case is substantial, defendant's testimony damaged his own credibility, and defense counsel challenged the motivation of KS's mother for filing for divorce by suggesting that her filing was an attempt to increase her chances of retaining her parental rights to KS. For his part, defendant makes no

argument on appeal that this testimony was outcome determinative, and does not attempt to support with citations to authority his conclusory statement that it was "highly prejudicial." Accordingly, we conclude that defendant has not shown that it is more probable than not that the error was outcome determinative.

Defendant's contention that defense counsel was ineffective because his objection to the testimony of KS's mother came one question after it should have is without merit. Counsel's failure to object to such relatively innocuous testimony as the fact that KS's mother filed for divorce one month after the allegations is not an error substantial enough to be characterized as falling below "an objective standard of reasonableness under prevailing professional norms." *Strickland*, 466 US at 688. A defendant is entitled to a fair trial, but not a perfect trial, because there is no such thing. *People v Miller*, 482 Mich 540, 559; 759 NW2d 850 (2008). Even if it were possible for any attorney to make every potential objection at a trial, an attorney may not want to object to something as harmless as this testimony to avoid wasting time, or to avoid aggravating the jury or the judge. See *People v Plummer*, 229 Mich App 293, 308; 581 NW2d 753 (1998). Further, defendant fails to show a reasonable probability that the outcome would have been different had counsel objected one question sooner. In short, defense counsel's performance did not deprive defendant of his right to a fair trial. See *Dendel*, 481 Mich at 125.

## IV. REASONABLENESS OF SENTENCE

Next, defendant argues that he is entitled to resentencing because the trial court departed upward from the mandatory minimum of 25 years without explaining why the additional five years was reasonable. We agree.

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). The standard of review is abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). A trial court abuses its discretion when it applies a minimum sentence that violates the principles of proportionality or "by failing to provide adequate reasons for the extent of the departure sentence imposed." *Id.* at 471, 476.

Pursuant to *Lockridge*, this Court reviews departure sentences for reasonableness, using the "principle of proportionality" set forth in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990) and its progeny. *Steanhouse*, 500 Mich at 460.[6] When a minimum sentence exceeds the

---

[6] Factors that may be considered under the standard of proportionality include:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015) (internal citations omitted), rev'd in part on other grounds by *Steanhouse*, 500 Mich 453 (2017).]

applicable range, sentencing courts must justify the sentence imposed in order to facilitate appellate review. *Id*. Otherwise, an appellate court cannot evaluate either the appropriateness of any departure from the guidelines, or whether the extent of the departure was proportionate to the circumstances of the crime and the defendant. *People v Steanhouse (On Remand)*, 322 Mich App 233, 239; 911 NW2d 253 (2017), citing *Milbourn*, 435 Mich at 659-660. When a trial court fails to explain the reasons for an upward departure from the minimum sentencing guidelines, this Court must remand the case so that the trial court may resentence the defendant. *Steanhouse*, 500 Mich at 476.

Here, a jury convicted defendant of three counts of first-degree criminal sexual conduct against a victim under 13, a Class A felony. The trial court scored the guidelines and concluded that defendant's minimum range would have been 135 to 225 months (11.25 to 18.75 years at the top of the range). However, as the trial court noted, the statute under which defendant was convicted carries a mandatory minimum of 25 years (6.25 years over the top of the guideline range) and a maximum of life imprisonment. MCL 750.520b(2)(b). The trial court stated that, because the guidelines could not possibly apply, the court would start at 25 years and go up from there. The prosecution requested that the sentences be, if not consecutive, at least 35 years. In pronouncing sentence, the trial court stated:

> But there is a young victim here who sat through this, who I don't think was looking for attention as I sometimes see. I—I believe she was truthful. I know—I believe she was credible.

> And therefore, because of all of that, does [sic] sentence you on all three counts, which will run concurrent to each other, of 30 years to 60 years in the Michigan Department of Corrections.

This explanation is insufficient. Without further explanation, this Court cannot evaluate either the appropriateness of the departure from the statutory minimum, or whether the extent of the departure was proportionate to the circumstances of the crime and the defendant. *Steanhouse (On Remand)*, 322 Mich App at 239. Therefore, we remand for resentencing.[7] *Steanhouse*, 500 Mich at 476.

---

[7] Defendant also argues that Offense Variable (OV) 8 (victim asportation or captivity) should have been scored at zero because there was no evidence that he ever moved KS to a place or situation of greater danger, or held her captive "beyond the time necessary to commit the offense." MCL 777.38(1)(a). We agree. However, as defendant concedes, he is not entitled to relief because his offenses were subject to a statutory minimum that far exceeded his minimum guidelines, even with the erroneous 15 points. Defendant also contends that this counsel rendered constitutionally ineffective assistance by failing to object to the trial court's scoring of OV 8. Because of the 25-year mandatory minimum sentence, counsel's objection would have been futile. Failure to make a futile objection does not constitute ineffective assistance. See *McGhee*, 268 Mich App at 627.

## V. *GINTHER* HEARING

Finally, defendant contends that the trial court abused its discretion by denying his motion for a *Ginther* hearing. We disagree. We review a trial court's decision on whether to hold an evidentiary hearing for an abuse of discretion. *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017). "An abuse of discretion occurs when a trial court's decision 'falls outside the range of reasonable and principled outcomes.' " *Id.*, quoting *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013).

Subsequent to a hearing on defendant's motion for a *Ginther* hearing, the trial court found that, "even if defendant [were] able to establish that defense counsel's conduct at trial fell below an objective standard of reasonableness, he would not be entitled to relief because he cannot establish that counsel's alleged deficient performance at trial prejudiced his defense." The trial court further explained that the victim had given detailed testimony about the behavior related to all three charges, that no corroboration of a victim's testimony is necessary to support a conviction for first-degree CSC (citing MCL 750.520h), and that this particular victim's testimony alone was sufficient to permit a rational jury to find him guilty of all charges. For these reasons, the trial court held that further factual development was not necessary in order for this Court to review the ineffectiveness of counsel issue on appeal.

We find no error in the trial court's reasoning. Having examined the record thoroughly in order to decide this appeal, we found the record sufficient to make a determination on the issue of trial counsel's effectiveness.

Convictions affirmed, sentence vacated, case remanded for resentencing. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Michael J. Kelly